(113 N. D. 598.)

---

BOYD VAN GORDON v. FRANK GOLDAMER AND L. D. BAIRD.

Opinion filed Oct. 14, 1907.

**Chattel Mortgage — Waiver of Lien.**

1. From the voluminous evidence in the case, which would be of no general interest to the legal profession or to the public, it is found that defendant Baird waived his rights as holder of a lien on chattels belonging to the plaintiff in favor of certain third parties, who took security on the same chattels, in consideration of such third parties making advances and extensions necessary to enable the plaintiff to carry out the terms of the contract with defendant Baird for the cropping of lands belonging to him during the season of 1905.

**Same — Knowledge of Waiver.**

2. The defendant Goldamer purchased lands from the defendant Baird before the crop of 1905 was fully secured, and with it the indebtedness of plaintiff to Baird, secured by the lien above referred to. *Held*, that the evidence establishes the fact that at the time of such purchase the defendant Goldamer had both notice and knowledge of such waiver by Baird, and that the security held by Baird was inferior to that held by the third parties.

**Same — Lien and Priority — Mortgagor's Duty in Application of Security.**

3. The plaintiff, who had induced third parties to make him advances to enable him to comply with the terms of the farm contract by means of which he raised a crop during 1905, and for which he had given them security, which is held to be prior to that held by the landlord on the crop raised, not only has an interest in the lawful application of the proceeds of such crop to his indebtedness, but it is his duty to secure if possible, such application in the order of priority of the security afforded by liens upon such crop when the total proceeds are insufficient to pay all lienholders in full.

**Appeal — Parties — Marshaling of Securities — Objections Raised Below.**

4. The mortgagor is a proper party plaintiff in a suit to secure application of the proceeds derived from the security for debts secured by the various liens in the order of their priority; and, conceding that a part of the lienholders might properly have been joined as plaintiff, or might have maintained independent actions to secure their rights, it is too late for defendants to first object in the Supreme Court to their non-joinder as plaintiffs.

**Stipulations — Binding Effect — Rights of Third Parties.**

5. This court is not bound by stipulation of the parties of record to an action wherein it is agreed that the trial court committed error in appellant's brief, and requesting this court to reverse the judgment of the lower court and enter judgment in favor of the appellants, and will not, under the circumstances disclosed by the record and stipulation in this case comply with the terms of such a stipulation, especially when the record discloses no reversible error on the part of the trial court, and interested third parties, with the knowledge of both plaintiff and defendant, have participated in and contributed toward the conduct of the litigation from its inception.

**Attorney and Client — Ratification.**

6. This suit was brought in the name of one Van Gordon as plaintiff, expenses being paid by holders of the liens upon the property in controversy, which liens, if the plaintiff prevailed, would be prior and superior to the liens of the defendants. Van Gordon appeared through an attorney, and was examined as a witness in his own behalf at great length on the trial, and testified that he was the plaintiff, and such testimony was not denied or questioned by either party until the record and briefs had been printed and the case set for argument in the Supreme Court, when the plaintiff filed an affidavit alleging that he had never employed the attorney of record for plaintiff to bring this action. *Held* that, even though the attorney claming to represent the plaintiff had acted without direct authority in bringing suit, plaintiff had ratified his acts and made him his attor-

ney, and that it is too late for plaintiff to deny such employment, or for the defendants to question the attorney's authority for the first time by stipulation and motion to reverse the judgment of the trial court, when set for argument in the Supreme Court.

Appeal from District Court, Nelson county; *Fisk*, J.

Action by Boyd Van Gordon against Frank Goldamer and L. D. Baird. Judgment for plaintiff.' Defendants appeal.

Affirmed.

*Frich & Kelly* and *Bangs, Cooley & Hamilton,* for appellants.

Proof upon which the reformation of an instrument is sought must be clear and convincing. Merchant v. Pielke, 9 N. D. 182, 82 N. W. 878; Benson v. Markoe, 37 Minn. 30; Clute v. Frazier, 12 N. W. 327; Jasper v. Hazen, 4 N. D. 1; 2 Pom. Jur., section 859.

One seeking to reform a contract must act properly. Sharpe v. Behr, 117 Fed. 864, 868; Citizens Nat. Bank v. Judy, 43 N. E. 259; Barfield v. Price, 40 Cal. 535.

Possession may charge notice of possessor's rights, but not of those of third persons. Wright v. Levy, 12 Cal. 257; Porter v. King, 1 Fed. 755.

Assignee of a chose in action taken subject to all defenses, but he is not bound by a parol agreement not known to him, made with a stranger to the contract intended to destroy the legal effect of the record. Williams v. Donnelly, 74 N. W. 601; Murray v. Laybourne, 2 Johns. Ch. 441; Heinrod v. Bolton, 44 Ill. App. 516; Bloom v. Henderson, 8 Mich. 395; Bailey v. Greenleaf, 7 Wheat. 46; Norton v. Rose, 2 Wash. 233.

*Scott Rex,* for respondent.

Reformation for mutual mistake, or mistake of one coupled with the fraud of the other party to the contract, will be had. Klatt v. Dummert, 73 N. W. 404; Carpenter Paper Co. v. Wilcox, 70 N. W. 228; Silbar v. Ryder, 23 N. W. 106; Littlejohn v. Creamery Co., 85 N. W. 588, 24 Enc. Law, 655; Merchant v. Pielke, 9 N. D. 182, 82 N. W. 878; McCormick Harvesting Co. v. Woulph, 76 N. W. 939; Welles v. Yates, 44 N. Y. 525.

Open, notorious possession is notice. Dickson v. Dows, 92 N. W. 798; 23 Enc. Law, 500; Leebrick v. Stahle, 27 N. W. 490; Sheerer v. Cuddy, 24 Pac. 713.

Question of waiver is a branch of the doctrine of quasi estoppel.  16 Cyc. 784; Fowler v. Parsons, 9 N. E. 799.

SPALDING, J.   This action was commenced for the reformation of a contract under which the plaintiff farmed a large amount of land in Nelson county, during the years 1903, 1904 and 1905, belonging to the defendant Baird, but now owned by the defendant Goldamer.  Plaintiff also asked for the appointment of a receiver to take charge of the 1905 crop.  It was asked that the contract be reformed by striking out certain portion by which title to the whole crop raised was retained by the owner of the land until a division thereof and as security for all advances and indebtedness of the tenant to the landlord.

It was contended by the plaintiff that this provision had been inadvertently inserted in the contract, without knowledge, of either the landlord or the tenant, by reason of a blank having been used in which this was printed in fine type.  The defendants deny that it was inserted by mistake, and the trial court declined to reform the contract.  We are satisfied that the court was correct in this; but we shall not consider the matter, because the conclusion which we have arrived at on another phase of the case render it unnecessary.  It is immaterial whether the landlord retained title to all the crop or not.  Two questions of fact and one of law are raised on the appeal, viz.:  Did the defendant Baird waive his right as owner or holder of a lien on the crop raised by respondent in 1905, either by agreement or by his acts?  If he did either, did defendant Goldamer have knowledge or notice of such waiver when he purchased the debt due from the respondent to Baird?  And had plaintiff, Van Gordon, such an interest in the subject of the controversy that he can maintain the action?

The plaintiff cropped the land under this contract during the seasons of 1903 and 1904; his share of the crop raised being three-fourths, and that of the landlord the remaining one-fourth.  The defendant Baird, as landlord, made advances to the plaintiff in a large amount, and in the fall of 1904 went to Lakota from his home in Austin, Minn., and there had various interviews with the plaintiff and other creditors of the plaintiff.  At that time Van Gordon was hopelessly insolvent.  All his property, stock and machinery were covered by a large number of mortgages.  First in the order of priority was a chattel mortgage on his horses and

machinery, securing a past-due indebtedness of upwards of $4,000; held by a former owner of the farm, named Thal. The defendant Baird held a chattel mortgage on the same property, subject to the Thal mortgage. Other creditors, including A. J. Gronna, Scott & Barrett Mercantile Company, and the defendant Goldamer, held other subsequent liens on various portions of the property. Thal was insisting on full payment of her indebtedness and was threatening to foreclose her mortgage. The effect of such foreclosure would have been to totally disable the plaintiff from carrying on the farm during the season of 1905, and would have rendered appellant Baird's security worthless and left him with no tenant. During this visit to Lakota the financial condition of the plaintiff was discussed by him and Baird, with a view to making some arrangement whereby he could continue his farming operations during the season of 1905. Baird was unwilling or unable to furnish the funds necessary to provide for this, but admits that he offered to waive his right to priority of security in favor of Gronna if the plaintiff could induce him to take care of the Thal indebtedness and furnish money and supplies needed to enable him to continue his farming operations during the following season, and permit Gronna to take security which would be superior to that held by him. He claims that this offer was not accepted. On the other hand, the respondent claims that it was made known to Mr. Gronna, and discussed between them, and was accepted and acted upon by Gronna and other creditors, including the appellant Goldamer. The testimony of the respondent is corroborated by other witnesses, and the subsequent acts of the parties concerned are also very strongly corroborative of the respondent.

The appellants urge that if any agreement was made, it was only to apply to Gronna, Scott & Barrett Mercantile Company, the defendant Goldamer, and Jorgenson Bros.; but, be this as it may, the proposition was made with reference to means to carry on the farm and raise a crop in 1905, rather than with reference to the persons who should furnish the means, and it was immaterial whether Gronna furnished all the supplies and money, or only part of them, and persuaded some one else to furnish the. rest. This agreement was executed by these various parties furnishing supplies and doing things necessary to enable the respondent to continue his farming operations. It was decided that it would

be better policy to permit the completion of the foreclosure of the Thal mortgage, which had commenced, than to take it up, and accordingly the security was sold under the foreclosure proceedings, and Gronna purchased most of it, all that respondent could make use of to advantage, and turned it over to the respondent, taking a new first mortgage on it and on the crops on certain tracts of land as security for the purchase price, and for advances either in money or supplies which he furnished respondent. Advances were made and supplies furnished by the other parties named from time to time, and chattel mortgages taken on separate portions of the crop to be raised. For the purpose of permitting these arrangements to be carried out, the appellant delayed taking security for the indebtedness due him until the 22d of July, 1905, after these other creditors had been secured. Respondent then gave Baird chattel mortgage security, subject to the liens of the others named. It is claimed by respondent that the agreement, and the subsequent conduct of the parties pursuant thereto, constituted a waiver by appellant Baird of his right to priority of security on plaintiff's share of the 1905 crop under the contract in question. The trial court so held. In this we think it was justified. A contract to retain the title to all of the crop covered by the contract was lawful, and except for some subsequent agreement the landlord would retain title until all the conditions of the contract were complied with. Angell v. Eger, 6 N. D. 391, 71 N. W. 547.

The appellant would have retained title to all the crop under his contract with the respondent, but for this agreement of waiver, and it is clear to us, by what we consider a great preponderance of the evidence, that there was such an agreement. That the lien of a mortgage may be waived by the mortgagee cannot be questioned, and such lien may be waived by parol. Stone v. Fairbanks, 53 Vt. 145; 25 Cyc. 673. And it may be impliedly waived by conduct of the lienholder inconsistent with the existence of a lien. 25 Cyc. 674. We cannot go into the evidence in detail; but, in addition to the evidence regarding an express agreement, the actions of all parties concerned strongly corroborate the testimony of the respondent. After this visit of Baird to Lakota in the fall of 1904, when he only remained at most two days, he returned to his home in Austin, Minn., and did not again visit Lakota for nearly a year, although there were 1200 acres plowed in the fall

of 1904, ready for crop, and he knew that without some arrangement of this kind it was an impossibility for respondent to 'carry on the farm during the year 1905. The evidence shows that he procured no other tenant, and does not disclose that he made any effort to secure any one else to crop the 1200 acres lying in readiness for crop during the season, or to cancel the lease to Van Gor don. Furthermore, T. J. Baird, of Lakota, was appellant Baird's agent and representative, and appears to have understood the facts and arrangements as claimed by respondent, although the record does not disclose that he had any authority himself to make such arrangements, except as he might be inferred to have from the fact that he looked after the interests of appellant Baird in the premises and conducted his business almost entirely without instructions from his principal and in accordance with his own best judgment in all respects. The failure of Van Gordon to farm the land during the season of 1905 would necessarily have resulted in great loss to appellant Baird, not only from the failure to raise a crop on the land, but also because it would leave no possibility of payment of the indebtedness then due him from Van Gordon, and the crop raised in 1905 came into existence through the instrumentality of the third parties who relied upon the waiver by Baird.

It is also insisted that no consideration passed to Baird on his agreement of waiver. We have already said enough in discussing the other question involved to show that he received valuable consideration, but may add that without this arrangement the debt due him was worthless, as paintiff would have no crop on which his security would attach, plaintiffs' chattels were about to go to sale on a prior mortgage, and his land might lie idle. It fact it was only exchanging security out of which there was no possible chance of realizing anything for security from which there was a possibility, and even a considerable probability, of obtaining some benefit. The agreement which made it possible for Van Gordon to proceed with his contract, on the part of Gronna and others, and the new and more valuable security promised and given by Van Gordon, all constituted a valuable consideration. It is not material whether it was understood that the waiver was on the security of the lease, or on that afforded by such chattel mortgages as Baird had been in the habit of taking. It is clear that it was meant to, and did, apply to Baird's security, without reference to its exact form; and the evidence discloses no right in defendant Goldamer to possession of all the crop at the time this suit was commenced.

The next contention of the appellants is that defendant Golda-
mer had no notice, either actual or constructive, of this waiver,
or of the claims of the third parties that their security was superior
to that held by Baird.  Early in August, 1905, Baird sold the land
covered by the contract to the defendant Goldamer, and included
in this sale was the indebtedness of Van Gordon to Baird,  se-
cured as hereinbefore described.  Goldamer was one of the ben-
eficiaries of the waiver, and he was one of the parties who made an
extension and furnished supplies to enable Van Gordon to con-
duct his farming operations through 1905, although rather vaguely,
and with some apparent effort at evasion, he attempts to testify
that he had no knowledge of the waiver or agreement regarding the
priority of the security.  The evidence is clear and certain that
he did have such knowledge and acted upon it, and the trial court
was warranted in so finding.

Appellants next urge that the plaintiff is not entitled to relief,
because they contend that the action is brought solely for the bene-
fit of third persons, who do not appear as parties to the action,
and that he has no interest in the application of the crop in ques-
tion to any particular indebtedness.  With this contention we can-
not agree.  The evidence shows that the agreement, if not made
directly with plaintiff, was made through his solicitation; that he,
being unable to proceed with the contract without assistance, would
lose the benefit of 1200 acres of plowing done by him on the land,
and the prospective profits on his share of the crop; that his per-
sonal property would go on foreclosure, and that great financial
loss was likely to result, without some such arrangement.  It also
shows that he persuaded the third parties to lend the needed as-
sistance, representing to them that the security which he offered
and gave would be superior to that of Baird.  Under these circum-
stances he not only had the right to insist that the proceeds of the
crop on which the security was given should go to the holders of
the superior liens, but a plain duty was imposed on him—the duty
to take all necessary and possible steps to secure the application of
the proceeds in accordance with the agreement, and where they, in
law and equity, belonged.  While it is true that these various parties
had remedies of their own, that fact in no manner relieved the
plaintiff of his obligation.  The statutes designate  the  proper
parties to an action, and also indicate the proper practice where

there is a defect in the parties. It is by demurrer or answer. The defendants did not demur, and answered only to the merits. Sections 6854, 6857, Rev. Codes 1905; 15 Enc. Pl. & Pr. 475. They thereby waived their rights to this objection. Section 6858, Rev. Codes 1905; Ross v. Page, 11 N. D. 459, 92 N. W. 822. And it is too late to suggest such objection for the first time in this court. Dunn v. Tozer, 10 Cal. 167; Fairmount Coal Company v. Hasbrecht, 48 Hun (N. Y.) 206.

Goldamer took possession of the premises during the harvest of 1905 and it appears claimed immediate possession of the whole crop raised, and that his security was superior to that of the creditors who had furnished supplies. The plaintiff asks in this suit to have the proceeds of the crop appropriated to the payment of the debts for which it was security in the order of priority, and to avoid the threatened legal conflict between third parties, appellant Goldamer and the respondent, and to save a multiplicity of suits. This he had a right to do. To secure this he asked to have a receiver appointed to take charge of the crop. The court denied this application and entered judgment to the effect that the defendant holds the proceeds of the plaintiff's three-fourths share of the crop in controversy, subject to the claims of the several creditors, to whom security thereon was given by plaintiff for supplies and advances, or for extension of prior existing secured debts under the agreement of waiver, and to the rights and claims of all such creditors in and to such portion of said crop, and the proceeds thereof are prior and paramount to any right or claim of the defendant Goldamer thereto by virtue of the farm lien or contract mentioned. We are advised on argument that defendant Goldamer gave a bond as security to these creditors and respondent for the proper application of such proceeds, and that the proceeds of such crop would be forthcoming in case the judgment of the district court should be affirmed. We are of the opinion that the showing made would have justified the appointment of a receiver, but the method adopted by the district court will doubtless serve the same purpose and protect the rights of the various parties.

Just prior to the argument of this case the attorneys for the defendant filed in this court an affidavit of the plaintiff, Van Gordon, stating that he desired the judgment and decree appealed from reversed, and that judgment be rendered in this cause for

such reversal, and for the dismissal of this case on the merits with prejudice, and with costs in favor of the defendants, and that he had entered into a stipulation filed with such affidavit, to that effect, for the purpose of terminating the litigation. He further states in said affidavit that counsel who appeared and represented him in this case were not employed by him, but were employed and were acting for third parties mentioned in the complaint, who claim an interest in the subject-matter of the litigation. In connection with the affidavit so filed is a stipulation signed by the plaintiff, Van Gordon, himself, and Frich & Kelly, attorneys for appellants, stipulating that the respondent confesses error in the making and rendition of the decree entered in the district court in each particular set out in appellant's brief, and further stipulating that a judgment and order of reversal of said decree may be made in the Supreme Court, providing for any such reversal and for the dismissal of this case on the merits, with prejudice, and for costs in both courts in favor of the appellants and against respondent, and requesting the Supreme Court to enter such judgment and order, and remand this case to the district court to carry into effect such stipulation. Neither counsel for respondent nor the other interest lienholders executed or knew of this stipulation and motion till presented in this court. This is a novel proposition. We say so, because it is novel to us, and we are unable to find any authorities directly in point. The appellants' counsel on the oral argument cited a few cases; but on examination we find they establish no principles applicable to this motion, though one is to the effect that such stipulation will be recognized when justified by the record. We shall not undertake to distinguish between the different authorities regarding the right of a suitor to dismiss his action without the knowledge or consent of his attorney. There are respectable authorities on both sides of the question. This court held, in Paulson v. Lyson, 12 N D. 354, 97 N. W. 533, that under the facts of that case the action could be dismissed by stipulation signed by the defendant without the knowledge or consent of his attorney of record, and from a casual reading of the opinion, it would seem to apply to this case; but the court attempted to distinguish that case from certain other cases apparently holding to the contrary, and referred with seeming approval to Toy v. Haskell, 128 Cal. 558, 61 Pac. 89, 79 Am. St. Rep. 70, in which the facts were very similar to those in the

case at bar, and which negatives the right of the plaintiff to dismiss, on the ground that a party can only be heard in court through his attorney, when he has one; hence we are constrained to suggest that, if the case at bar disclosed no additional barriers to a recognition of the stipulation, we might cite Paulson v. Lyson as authority of our action. We, however, place our decision on other grounds.

Was Van Gordon the plaintiff in this action? Was the suit brought by him, and did the attorney of record act for him through the proceedings in the trial court and to the time when the stipulation for reversal was filed? Van Gordon testified on the trial, and on the main case his testimony occupies 76 pages of the printed record as a witness for the plaintiff, while on rebuttal it occupies two and a half pages. The first question asked him was whether he was the plaintiff in this case, and his reply was, "Yes, sir," and the truth of this was not denied until the appeal was set for argument in this court. We think this, in connection with our observations, supra, on appellants' contentions that Van Gordon had no interest in the controversy which entitled him to bring the action, make it clear that he is the plaintiff. Whatever the facts may be regarding his initiating the suit and his original employment of Mr. Rex as his attorney, he most emphatcally ratified the bringing of this suit and the procedure adopted by his record counsel in its conduct, and made him his attorney in this case. We are unable to see that the fact that third parties would derive either direct or incidental benefit from the result, if the efforts of counsel were successful, and saw fit to contribute to his employment, makes him any the less, under the circumstances, the attorney of the plaintiff than he otherwise would have been. The plaintiff, Van Gordon, had knowledge of the facts, aided or was aided to secure what he and those interested with him deemed to be just, and we think, after doing so, he cannot be heard to say that he did not employ the counsel or authorize the action. Having ratified them, he is in the same position as though he had acted from the beginning. To say the least, all the circumstances surrounding the trial and other proceedings serve as a ratification. Dresser v. Wood, 15 Kan. 344; Hodgins v. Heaney, 17 Minn. 45 (Gil. 27); Hughes Co. v. Ward (C. C.) 81 Fed. 314.

Some cases hold that the authority of an attorney to appear must be raised in the trial court, and cannot be raised for the first

time on appeal. 2 Enc. Pl. & Pr. 681, and cases cited. We are unable to reach a conclusion that parties, by stipulating that error has been committed by the trial court, can bind the court to find error, when none is actually disclosed on examination of the record, and when it appears on argument that to give effect to such stipulation would work great injustice to parties interested financially in the result of the litigation, and who have, as conceded, furnished in good faith to respondent·the means for its prosecution. The lien claimants were also clients in this matter of the attorney of record for the respondent. As we have shown, they were interested in the result of the suit, and with full knowledge of the plaintiff they participated in the proceedings, and furnished the means with which to conduct the litigation. This was also with the knowledge of at least defendant Goldamer and his counsel. With knowledge of all these facts, the action of the plaintiff and defendant in attempting to dismiss verges very closely upon fraud. Under other circumstances we might arrive at a very different conclusion. The defendant Goldamer, as we have before stated, furnished a bond to account for the proceeds of the crop in accordance with the direction of the court, and has retained possession of the crop or of such proceeds. In so doing he may be said to have accepted benefits under the judgment entered by the trial court, and his action comes near being a waiver. Most of the authorities cited in appellants' brief on the motion to dismiss relate to cases in which there was an agreement that the compensation of attorneys should be taken from the judgment when collected, or there was a verbal agreement for the assignment of a portion of the judgment. In either case the parties in whose interest the dismissal was sought had no knowledge or information as to third parties being interested or the rights of attorneys, and several cases intimate that with such knowedge the decision might have been different. Although a nominal or legal plaintiff may dismiss or discontinue a suit brought for the use of another, where the latter is shown to have no beneficial interest in the subject-matter in controversy, and although there are a few early decisions which, following the rule that courts of law consider only legal rights, hold that the plaintiff of record may dismiss, even though it is alleged and offered to be proved that the beneficial interest is in another, yet the rule under the weight of authority is that, where persons other than the plaintiff of record are interested in the prosecution of a

suit, the courts will protect the rights of such persons, and will not permit the plaintiff to dismiss to the prejudice of the persons beneficially interested.   14 Cyc. 397.

The application to dismiss is denied, and the judgment of the trial court is affirmed.   All concur.

FISK, J., being disqualified, did not sit on the hearing of the above entitled action, nor take any part in the decision; JUDGE JOHN F. COWAN, of the Second Judicial District, sitting in his place by request.