## W. A. SIMMONS v. J. McCONVILLE.

Opinion filed February 19. 1910.

**Trover and Conversion—Title to Maintain—Cropping Contract—Evidence.**

1. Plaintiff brought an action for damages for the conversion of one-half of the flax raised by him on land belonging to the defendant under a written contract. and for the conversion of three-fourths of the oats and speltz raised by him on land belonging to the defendant under an oral contract. The written contract provided that the title and possession of the grain should be in the land owner until a division thereof, and until all the covenants and agreements to be performed by the plaintiff had been fulfilled. Held that, until the grain raised under the written contract was divided, neither the legal title to nor the right of possession of any part of said grain was in the plaintiff and he could not maintain an action for conversion.

**Trover and Conversion—Disputed Contract—Question for Jury.**

2. As to whether an action in conversion would lie for the oats and speltz, is dependent upon the terms of the contract under which they were raised. This was a disputed question of fact, which should have been submitted to the jury.

Appeal from District Court, Dickey county; *Allen*, J.

Action by W. A. Simmons against James McConville. Judgment for plaintiff and defendant appeals.

Reversed in part, and remanded for new trial on one issue.

*W. S. Lauder* and *Austin & Axtell,* for appellant.

*Youker & Perry,* for respondent..

CARMODY, J. On the 16th day of April, 1906, the defendant was the owner of the following described real property situated in Dickey county, N. D., towit: The N. E. 1-4 of section 3, township 129, range 65. He was also the owner of the N. E. ¼ of section 4 in the same township and range.

On the date above mentioned the defendant, under a contract lease, leased all of the quarter in section 3 to the plaintiff for the farming season of 1906. Said lease was in writing,. and signed by both parties, and, as far as material, is as follows: "Witnesseth: That the said party of the first part hereby covenants and agrees to and with the said party of the second part for the consideration hereinafter named, to well and faithfully till and farm, during the season of farming in the year 1906, commencing April 16, 1906, and ending

December 1, 1906, in a good, husbandman-like manner, and according to the usual course of husbandry. (Here follows description.) And the said party of the first part hereby further covenants and agrees to sow and plant the said land, party of the first part to haul and clean all seed used on said land free of charge. The party of the first part also agrees to furnish at his own cost and expense all proper and convenient tools, teams, utensils, farm implements and machinery (except as hereinafter otherwise provided) to carry on and cultivate said farm during said season, and to furnish and provide all proper assistance and hired help in and about the cultivation and management of said farm, and to farm and cultivate the said lands to the best advantage and according to his best skill and judgment, and to maintain and keep up the fences so as to protect said crops from injury or waste, * * * and to crop and cultivate said lands, and harvest and secure the crops grown thereon in a farmer-like style and in the best possible manner during the season, * * * and generally do and perform all proper and ordinary work, labor, care and skill requisite, usual or necessary to work and crop said premises in a proper manner and style and to the best interests of the party of the second part; and further agrees not to move any straw or manure from said farm, but to haul out and spread on said premises all the manure made thereon, and not to sell or remove, or suffer to be sold or removed, any of the produce of said farm or premises, or the stock, increase, income or the products herein mentioned of any kind, character or description, until the division thereof, without the written consent of the party of the second part; and until all the covenants and agreements to be performed by the party of the first part shall have been fulfilled and such division made, the title and possession of all grain, crops, produce, income, and products raised, grown or produced on said premises shall be and remain in the party of the second part, and said party of the second part has the right to take and hold enough of the crops, income, and products that would on the division of the same belong to said party of the first part, to repay any and all advances made to him by the party of the second part, * * * and also to pay all the indebtedness due said party of the second part by said party of the first part, if any there be. * * * It is also agreed that, in case said party of the first part neglects or fails to perform any of the conditions and terms of this contract on

his part to be done and performed, then said party of the second part is hereby authorized and empowered to enter upon said premises and take full and absolute possession of the same, and he may do and perform all things agreed to be done by the party of the first part remaining undone, and to retain or sell sufficient of the crops raised on said premises that would otherwise belong to said first party if he had performed the conditions hereof, to pay and satisfy all cost and expenses of every kind incurred in performing said contract, * * * and the residue remaining, if any, of said crops, shall belong to the said party of the first part, after all conditions are fulfilled. * * * And it is further agreed that as soon as such threshing is finished the said party of the first part shall at once and at his own cost and expense deliver the one-half part of said grain to said second party in his granary on the land or as the second party may elect at . . . . . . . . . . railroad station, and take receipts therefor in the name of said second party, and deliver the same to him on demand. That said first party shall sow 75 acres to wheat and plow and sow 85 acres to flax, all seed to be furnished by the second party, who also agrees to pay one-half of the cost of threshing and allow the first party one-half of all crops grown on the land for his compensation. Upon the prompt and faithful performance of all the foregoing agreements and conditions by said first party, the said party of the second part agrees to give and deliver to said first party, upon said premises, the balance of the grain raised thereon as aforesaid, to-wit: The one-half part thereof as and for said first party's share and compensation hereunder. In case of sufficient storage room on said farm for said first party's share of said grain, it is hereby agreed that he may haul and deliver the same to one of the elevators at. . . . . . . . ., but in such case at least . . . . . . bushels of said wheat shall be for and in the name of the said second party, to whom, and in whose name, the elevator company receiving such wheat shall deliver the proper receipts therefor, said........................bushels shall be retained by said second party as security for the plowing and other work to be done hereunder by said first party."

After the written contract was entered into defendant, under an oral agreement, leased to plaintiff for the farming season of 1906, 20 acres of the quarter in section 4. Under the terms of the agreement, with reference to the 20-acre tract, all parties are agreed that

plaintiff should furnish the seed, do all the work, and bear all the costs incident to farming the land, and that plaintiff should have three-fourths of the crop and defendant one-fourth. It was claimed by the defendant, and he so testified, that it was orally agreed between the parties that all the provisions of the written contract should apply to the 20-acre tract in section 4, except that plaintiff should furnish the seed, pay all the threshing bill, and should be entitled to three-fourths of the crop, and the defendant should have one-fourth of the crop. The plaintiff, however, denied that there was any understanding or agreement that any of the provisions of the written lease should apply to the 20-acre tract. The plaintiff farmed all of this land during the season of 1906. There was 940 bushels of flax raised on the quarter in section 3. The wheat raised is not involved in this action. On the 20-acre tract in section 4 there was raised 823 bushels of oats and speltz. The defendant cut a portion of the flax, furnished certain board, provisions, and horse feed for plaintiff, in connection with the farming of this land. The plaintiff also used some tools or farm implements belonging to the defendant. Defendant also procured the threshing to be done, and paid the threshing bill. There has never been any settlement between the plaintiff and the defendant with reference to any of these items, and plaintiff has never paid to the defendant the same or any part thereof. After the grain in question had been threshed it was placed in granaries on the premises of the defendant, and the flax, oats, and speltz have been in the sole and exclusive possession of the defendant ever since. There has never been any division of the crop as between plaintiff and defendant, except the defendant placed about one-half of the flax and about one-half of the oats and speltz in separate bins, in the granaries on his premises, as hereinbefore stated. This he claims he did, so that, when a settlement was made between him and plaintiff, it would be convenient to divide said grain between them. The defendant has not delivered to plaintiff any part of this crop as for his share thereof or otherwise. The plaintiff claims that he was ready at all times to perform his contract, and get the threshing done, and that it was unnecessary for the defendant to perform any part of said contract. This is denied by the defendant. The defendant paid the threshing bill, amounting to $248.91, of which $145.03 should have been paid by the plaintiff. This, the plaintiff claims, he was ready and willing

to pay, but had not paid it. After making a demand on the defendant for one-half of the flax and three-fourths of the oats and speltz, plaintiff brought this action against the defendant in conversion upon two causes of action: (1) For the value of the said one-half of the flax; and (2) for the value of three-fourths of the oats and speltz. At the close of all the testimony defendant moved the court to direct the jury to find a verdict for him on the ground that the uncontradicted testimony showed that at all times the defendant was the owner of and rightfully in the possession of the personal property involved in this action, and that the plaintiff was at no time the owner of, nor entitled to the possession of, any of the property involved in this action, which motion was overruled and an exception taken by defendant. The defendant then moved the court to direct the jury to find a verdict for him as to all the flax involved in the action, on the ground that the uncontradicted testimony showed that defendant was at all times, and has been, the owner of all said flax, and has at all times been in the lawful possession and entitled to the possession thereof, and that the uncontradicted testimony showed that plaintiff had never been the owner of any part or portion of said flax, and had never been entitled to the possession of the same nor any part thereof, which motion was overruled, and an exception taken by defendant.

The case was submitted to the jury, which found a verdict in favor of the plaintiff for the sum of $751.45. A motion for a new trial was duly made and overruled, and judgment entered on the verdict. From the order overruling the motion for a new trial, and from the judgment defendant appeals to this court.

Among the numerous errors assigned, we shall notice but two, and these relate to the ruling of the court in refusing to direct a verdict in favor of the defendant and in refusing to direct a verdict in favor of the defendant as to the flax. As to the flax, the plaintiff agreed that the title to any portion of the flax should not vest in him until it was divided and until all the covenants and agreements to be performed by him had been performed. Indeed, the plaintiff does not seriously contend that he was entitled to the possession of the flax until the division thereof, and until he had performed his part of the written contract, herein mentioned, nor to the possession of the oats and speltz, if defendant's version of the contract, under which they were raised, was correct. Plaintiff, how-

ever, contends that the defendant's version of the contract under which the oats and speltz were raised was not correct, and contends that the defendant himself made a division of both the flax and the oats and speltz. The evidence as to the division was given by the defendant, who, on cross-examination, testified as follows: "I testified that I still had this flax out there in my granary all in one bin. I have divided a portion of it. I divided it from the machine.".

Q. But I thought you said it was all in one bin?

A. A part in a bin and another in another. His was in one bin and mine in another. I have not subdivided out of his bin so as to take out any portion for the costs of the threshing and the cost of the use of my machinery and time that I swore to. It is in my granary on my land on section 4, N. E. ¼. That is where my house is. This flax was raised over on the northeast of section 3. I took this flax and hauled it over on section 4 because I wanted to hold possession of it. It wasn't in my contract to haul it to Forbes. This flax was to be put in my granary until a division. Under my contract, my flax wasn't to be put in a granary on section 3; no buildings on section 3. I signed this contract. The reason I didn't haul this grain some place else was that I wanted to hold possession until these things were settled, and so I hauled it to my own place. * * * I never offered to tender or deliver to him any share or part of those oats or speltz. I told him he could have the oats when this thing was settled and the bills paid. I have testified that the oats and speltz were divided, his share in one place and mine in another, and they are in the same place today. I have not fed anything out of them. I have never made any division or any subdivision of the share of Mr. Simmons' oats and speltz for the purpose of defraying the threshing bill or work and labor. They are in a bin now there together." On redirect examination he testified as follows: "Q. You said something about a division of this property, now just what do you mean by that, Mr. McConville? A. I mean that there was a division made of this grain. I put part in a granary and his part in another, and it has remained there since. I put the flax in two bins, put about half in one and half in the other. Q. How about the oats and speltz? A. All right there together. His part in one bin and mine in another. The oats and speltz are in two bins about equally divided. I have never delivered any part of it to Mr. Simmons, and have always had it. It was divided in that

way so that, when we finally made a settlement, the grain would be in a position to deliver when it would be coming to him, his share of it."

This evidence we think does not show any division. The plaintiff was not present, never consented to it, and knew nothing about it. The defendant placed the grain in his own granaries, but in separate bins, as he said, so that it would be more convenient to deliver to the plaintiff his share when a settlement was had between them. As far as the flax is concerned, it is well settled by former decisions of this court that neither the legal title to the property nor the right of possession was in the plaintiff at the time this action was commenced. The plaintiff undoubtedly had an equitable interest and could enforce his rights by a suit in equity, but he could not maintain replevin, or sue for conversion. The unjust refusal of the defendant to deliver to the plaintiff any part of the flax would not make him the owner of the legal title, but would only give him a cause of acion in equity to enforce his rights under the agreement. Angell v. Egger, 6 N. D. 391, 71 N. W. 547, and cases cited in the opinion in that case; Bidgood v. Monarch Elevator Co., 9 N. D. 627, 84 N. W. 561, 81 Am. St. Rep. 604; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Van Gordon v. Goldamer et al., 16 N. D. 323, 113 N. W. 609; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377; Wadsworth v. Owens, 17 N. D. 173, 115 N. W. 667; Consolidated N. & I. Co v. Hawley. 7 S. D. 229, 63 N. W. 904; Esdon v. Colburn, 28 Vt. 631, 67 Am. Dec. 730; Wentworth v. Miller, 53 Cal. 10; Moulton v. Robinson, 27 N. H. 550.

As to whether the oats and speltz were governed by the terms of the written contract was a question for the jury, and, if the jury should find under the evidence that the defendant was correct in his contention that they were, then he was entitled to the possession of the oats and speltz, and this action as to them could not be maintained. The question as to whether the oats and speltz were raised under the terms of the written lease should have been submitted to the jury under proper instructions. It follows that the court should have granted the motion of the defendant to find a verdict for him as to the flax.

The judgment and order appealed from are reversed, and the court directed to dismiss plaintiff's cause of action as to the flax, and to grant a new trial as to the oats and speltz. All concur.