A. B. HERRMANN v. MINNEKOTA ELEVATOR COMPANY, a Corporation.

(145 N. W. 821.)

**Evidence — crop — written lease — hold over.**

1. Evidence examined and *held*, that one T. raised the crop in litigation as a hold over under a prior written lease. Section 5531, Rev. Codes 1905, governing in the case.

**Evidence — grain — division of — sale.**

2. Evidence examined and *held,* that no division of the grain was made prior to the sale thereof to the defendant elevator company. Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561, cited and followed.

**Conversations and statements — parties — effect of — judgment.**

3. Certain conversations and statements with and by the officers of the bank which owned the land, examined, and *held,* not binding upon the defendant elevator company. Judgment should have been directed in favor of the defendant.

Opinion filed February 11, 1914. Rehearing denied March 2, 1914.

Appealed from the County Court of Benson County, *Liles,* J. Reversed.

*F. B. Lambert,* for appellant.

Statements made by outside, disinterested parties are wholly incompetent and immaterial; to make a person a party to an action, service of the summons upon him is necessary. Bunker v. Taylor, 10 S. D. 526, 74 N. W. 450.

Tetrault was a hold over under the old lease, and the rights of the parties are fixed and controlled by such lease. Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932.

The grain had never *been divided* so as to change the vested title. Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Smith v. Atkins, 18 Vt. 461; Esdon v. Colburn, 28 Vt. 632, 67 Am. Dec. 730; Andrew v. Newcomb, 32 N. Y. 417; Consolidated Land & Irrig. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; Moulton v. Robinson, 27 N. H. 550; Lewis v. Lyman, 22 Pick. 437; Howell v. Foster, 65 Cal. 169, 3 Pac. 647; Griswold v. Cook, 46 Conn. 198; Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415; Lloyd v. Powers, 4 Dak. 62, 22 N. W. 492; Meacham v. Herndon, 86 Tenn. 366, 6 S. W. 741; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932.

The title to the grain under the contract in this case remained in the owner of the land until an actual division of the grain. Walton v. Mattson, 22 N. D. 532, 135 N. W. 176.

Demand and refusal are necessary in all trover cases, where defend-

ant is *rightfully* in possession. 38 Cyc. 2032, note 75; cases from Ala.; Ark.; Colo.; Conn.; Ga.; Ill.; Ind.; Iowa; Kan.; Ky.; Me.; Mass.; Mo.; N. J.; N. Y.; N. C.; Ohio; Pa.; Tenn.; Wis.; U. S.; Eng. and Canada. Smith v. Smalley, 19 App. Div. 519, 46 N. Y. Supp. 279; Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434; Shinn, Replevin, § 295, and cases cited in note 2; 38 Cyc. 2068, citing cases from Ala.; Cal.; Ind.; Ind. Terr.; Iowa; Mass.; Mich.; Mo.; Mont.; Neb.; N. Y.; N. C.; N. D.; Or.; S. D.; Wis.; U. S.; Kan.; R. I.; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266.

*Flynn & Traynor,* for respondent.

The bank is estopped to claim a superior title to Tetrault's half of the grain, over plaintiff's mortgage, because of the representations of Edwards to Hermann the preceding winter, to the effect that Hermann's mortgage thereon was a *first* mortgage—and there followed an actual division of the grain. The tenant is the absolute owner of the crop unless title is reserved in the owner of the land. 24 Cyc. 1067.

If the landowner retains title, he can pass it to the tenant, even though the tenant has failed to perform the contract. Lallier v. Pacific Elevator Co. 25 S. D. 572, 127 N. W. 558.

If the acts in themselves constitute a conversion, no *demand* is necessary. Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 750; More v. Burger, 15 N. D. 345, 107 N. W. 200.

Especially is no demand necessary where it would be unavailing. Hahn v. Sleepy Eye Mill. Co. 21 S. D. 324, 112 N. W. 843; Consolidated Land & Irrig. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; Willard v. Monarch Elevator Co. 10 N. D. 400, 87 N. W. 996.

BURKE, J. In 1908 one Wright owned a quarter section of land in Rolette county, North Dakota, and made a written lease with one Tetrault to farm the same during the years 1908, 9, 10, which lease reserved the title in the landlord to all crops until a division thereof. In August, 1909, Wright sold the land to Dr. Robertson, and he, in October 1910, deeded it to the First National Bank of Rolette, of which he was vice-president and for whom he had previously held the title. During the years 1909 and 1910 the bank assumed the lease with Tetrault, and after a division of the grain turned one half over to said

tenant. On November 1, 1910, Tetrault, the tenant, executed a chattel mortgage to the plaintiff herein, Herrmann covering his interest in the 1911 crop upon said land.

Tetrault farmed the land in 1911 without any further written lease, and much of the dispute in this case hinges upon the nature of such lease. The plaintiff contends that a new verbal lease was made for the year 1911, while the defendant maintains that Tetrault held over under the old written lease. The decision of this question is discussed in ¶ 1 of this opinion. When the time for threshing the grain arrived, the same was delivered to the defendant elevator company, a load at a time, and mingled with grains received from other farmers. After the first day's hauling the amount, 458 bushels and 40 pounds, No. 2, wheat was sold at 94 cents per bushel, the check being taken in the name of Dr. Robertson. The second and last day, 494 bushels and 10 pounds of No. 2 wheat was delivered and sold at 92 cents per bushel. Another important question in this lawsuit depends on whether or not there was a division of the grain at the time of the sale, and this proposition is discussed in ¶ 2 of the opinion. The third and last question necessary for a decision of this case is whether or not the bank has been estopped by admissions by its officers, to deny the fact of an oral lease, and also the fact of a division of the grain, and this will be discussed in ¶ 3.

(1) Section 5531, Rev. Codes 1905 provides: "If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time not exceeding one year." It is undisputed that Tetrault farmed the land in 1909 and 1910 under the written lease, and that he continued in possession of the farm during the year 1911, under practically the same terms. The president of the bank testified at the trial that he had full and active management for the bank of this particular tract of land, and personally conducted all negotiations to the same with Tetrault; that in the fall of the year 1910 in a conversation with Tetrault he had stated to him that he could go on farming said land for another year under the same terms and conditions as the old lease, and that pursuant to this conversation the bank had furnished seed, paid one half of the threshing bill, and otherwise conducted itself under the terms of the old written lease.

Tetrault did not testify in the case, and the only evidence upon which the plaintiff can rely is some alleged admissions of Dr. Robertson, the vice-president, and Mr. Edwards, president, of the bank, which statements were testified to by the plaintiff himself, and were received in evidence over the objection of the defendant. Herrmann testified that in February, 1911, he noticed Tetrault hauling seed grain out to the place, and went to Edwards and asked him if he was furnishing Tetrault with any grain that had been charged up against his half of the crop for that year, and Edwards had said, "no," after which he told Edwards that Tetrault had told him that there was a verbal lease under which Tetrault was to receive one half of the grain, and that he had taken a mortgage upon that half, and asked him how things stood, and that Edwards had said that there would be nothing charged against the Tetrault interest, and that his mortgage would be a first lien on his half of the crop. Plaintiff also testified that he had a talk with Dr. Robertson just after the grain was sold, in which Robertson had told him that he had instructed the elevator agent to sell every other load for him and leave the other for Tetrault. Upon the question of the nature of the lease, we can see nothing inconsistent with the defendant's claim in the conversation between Edwards and Herrmann, and in view of the positive evidence of Edwards that the 1911 lease was a renewal of the old written lease, we think the undisputed evidence shows such to be the case and the relation of the parties herein to be exactly the same as though this dispute had arisen over the 1910 crop. The conversation with Robertson has nothing to do with this phase of the dispute, and will be treated in ¶ 3. Therefore the court should have instructed that the lease in dispute was a continuation of the written lease of 1908 and 1909, and withdrawn from their consideration the question of a different oral lease.

(2) Plaintiff insists that even if it be conceded that the 1911 lease was a continuation of the old written lease and contained a reservation of title in the bank until a division, still there is evidence of a division of the crops sufficient to take this question to the jury. Again, all of the positive evidence favors the defendant, and plaintiff is obliged to rely upon the admissions of Dr. Robertson to substantiate his contention. The elevator agent who bought the grain testifies positively that there was no division thereof until after the sale at least; that the teams began

hauling upon September 25, Tetrault driving one of the teams, and that the grain was commingled with other grains, and that all of the grain was entered in Dr. Robertson's name in the scale book. He further testifies that at the close of that day he sold all the grain received, at Dr. Robertson's request and gave him the cash ticket therefor. Upon Monday the 27th, more grain was hauled to the elevator, and sold under the bank's directions without Tetrault being present. True, the cash check for the second day was made to Tetrault, but it is in a different amount than that of the first day and for a different number of bushels, and upon none of these conversations was Tetrault present to agree to or accept a division of the grain.

The agent testifies: "There was no attempt made to divide between Tetrault and Robertson any of the actual grain delivered; there was no grain divided in the elevator; both exhibits 1 and 2 were delivered by me to Dr. Robertson's father on the 26th of September, both at the same time; all of the grain was entered in Dr. Robertson's name in the scale book."

And again he was asked by plaintiff's attorney:
Q. And you say the grain was not divided?
A. No, sir.

And against he testified:
No, sir, the grain was not divided. I kept it all in one bin; some was put in on Saturday, and other people's grain with it, and we kept on putting in other people's grain in the same bin; so that on Monday I could not distinguish either Tetrault's grain that had been brought on Saturday from anybody else's grain.

This is the only positive evidence as to a division, and is clearly in favor of defendant's contention that no division was made. Plaintiff, upon the other hand, contends that the fact that there were two separate tickets of nearly the same size issued, one to Robertson and one to Tetrault, shows that there was a division, and points to the testimony of the agent, who says that "Robertson figured up as to the amount on

the ticket, exhibit 2, that was his part of it, and told him to draw the rest to Tetrault."

Q. At that time the grain had not all been received at the elevator?
A. No.

We do not see how this tends to establish a division. Surely no division could be had until all of the grain had been received in the elevator. Even if Robertson had consented that some of the money go to Tetrault, the inference would be that a division was delayed until all of the grain had been received, when a final settlement might be had. Nor do we think the conversations alleged by Herrmann to have occurred with Robertson tend in any manner to establish that a division had been made of the grain hauled from this farm to the elevator. Neither do we see anything in the letter written by the agent of the elevator company, November 20, 1911, of any tendency to show division. The letter reads in part as follows: "The first day's hauling of the grain was entered on scale book in Dr. Robertson's name, and was sold that evening on cash ticket No. 20,085 by orders from Robertson, and I held this ticket until the grain was all hauled in, which then was turned over to Robertson; here is a list of loads on that ticket. . . . This amount (Monday's hauling) is on cash ticket No. 20,090–1. This includes all the grain, and was no storage ticket made out at all. Was all sold by cash ticket when they got done hauling." See Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561, and valuable note at page 630 of the state report. Under the holding of this latter case, "a mortgage of personal property not then owned by the mortgagor will not attach to such property as a lien thereon until the mortgagor acquires some title or interest therein." And wherein it is further stated: "A mortgage was executed by a tenant upon a portion of a crop that he expected thereafter to raise, under a lease which declared that the entire title and right of possession of said crop should remain in the landlord . . . until the crop was divided. . . . The specific grain raised was never divided, but was delivered to an elevator for general storage, and subsequently the parties agreed upon their respective shares, and general storage checks were delivered by the elevator to each party for

27 N. D.—16.

the number of bushels to which he was entitled. Held, that the tenant never acquired any interest in the specific grain raised to which the mortgage lien could attach." See also Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Wadsworth v. Owens, 21 N. D. 255, 130 N. W. 932.

We are thus forced to the conclusion that in this case there was no evidence whatever of a division of the grain, and that therefore plaintiff's mortgage never attached thereto, and his suit must fall.

(3) The only remaining question for consideration is whether or not the statement made by the officers of the bank work an estoppel upon the elevator company, and prevent it asserting what we have already held to be the facts in this case. Two complete answers can be made to plaintiff's contention. First, the conversations relied upon by Mr. Herrmann are not binding upon the elevator company in this action, even though they might be binding if the bank were the defendant. And second, the conversations, even if given the most liberal construction, do not show any division of the grain which would, under the holding in the Bidgood v. Monarch Elevator Co. Case, supra, give life to plaintiff's chattel mortgage.

It thus follows that at the close of all the testimony, plaintiff had failed to establish any cause of action against the defendant, and the motion for a directed verdict should have been allowed.

The judgment of the trial court is reversed, and it is directed to allow the motion of defendant for a judgment notwithstanding the verdict which was made on the 9th day of April, 1912.