# THE NATIONAL BANK OF WHEATON, Appellant, v. ELKINS, Sheriff, et al., Respondents.

## (159 N. W. 60.)

(File No. 3913.    Opinion filed August 29, 1916.)

**1. Chattel Mortgages—Undivided Interest in Crop—Conversion of Between Landlord and Tenant—Mortgage Lien as Against Execution Levy.**

Where a tenant of land had delivered to an elevator company rye raised upon the landlord's land, and had delivered same to an elevator company and received memorandum tickets therefor, and thereafter he had settled with the landlord on a division of the rye in equal parts between them, and the grain-buyer had written checks for the purchase money of the rye to the landlord and to the tenant respectively, and had delivered the tenant's check to him, whereupon the defendant, sheriff, levied upon the tenant's share of the rye an execution in favor of a co-defendant under a judgment against the tenant, and thereafter another levy thereunder was made upon the tenant's share of the rye and the proceeds thereof, whereupon the tenant's check was delivered to the sheriff, who cashed it, and received the amount thereof less the amount of another mortgage held upon rye by a drawee of the check, the balance of the check being paid to the execution plaintiff, **held**, that. notwithstanding the identical rye delivered by the tenant to the grain warehouseman was mingled with the general mass of grain, and regardless of the fact that the tenant could only require a return of like kind, quantity and amount from the elevator company, yet at the instant when settlement was had and division of the crop made, the tenant's interest. became a legal, as well as an equitable interest, and plaintiff's mortgage lien then attached to the legal interest, which lien was paramount to that of the execution levy; and the elevator company then held the tenant's share subject to the mortgage; and when it issued a check which did not recognize the mortgage lien, it did so at its peril.

**2. Same—Tenant's Undivided Interest in Growing Crops—Title in Landlord Until Division—Mortgage Lien on—Statute.**

It is the settled rule of this jurisdiction, that the equitable interest of a tenant in crops to be grown, under a farm lease providing for equal division of the crop, and reserving title and possession thereof in lessor until performance of the terms of the lease and settlement between them, is the subject of mortgage; construing Civ. Code, Sec. 2024, authorizing an agreement to create a lien on property not yet acquired, or not in existence, in which case the lien shall attach from time when lienor acquires an interest therein.

3.  Chattel Mortgages—Growing Crops—Tenant's Equitable Interest
    —Constructive Notice of Mortgagee's Future Rights.

A previously recorded chattel mortgage is constructive notice
that the tenant mortgagor's equitable interest in the mortgaged
grain was incumbered, and of what the mortgagee's legal rights
would be when settlement was had between landlord and
tenant.

4.  Chattel Mortgages—Tenant's Undivided Interest in Growing
    Crop—Nature of Tenant's Title and Possession.

he title and possession reserved by a lessee of farm land in
grain to be raised thereon, is a kind of theoretical title and
possession for the protection of the landlord, but not for the
purpose of enabling the landlord to violate the rights of the
tenant or of his creditors; and held, that where the lease
provided that in default of performance of the conditions of a
contract on his part the landlord might enter and take posses-
sion and perform the things agreed to be done by the tenant,
and retain or sell sufficient of the crops to pay and satisfy
all costs and expenses in performing the contract, the residue
to belong to the tenant, the parties did not contemplate that
such reservation of title and possession was absolute; and until
a breach by the tenant the actual possession remained in him,
notwithstanding the prior reservation of title and possession
in the landlord and tenant.

5.  Warehousemen—Storage Receipts, Rights Under—Restoration in
    Like Kind.

Under Pol. Code, Sec. 488, the holder of a warehouse re-
ceipt given for stored grain cannot require restoration of the
identical grain, but only grain of the same amount, kind, and
quality.

6.  Evidence—Landlord and Tenant—Conversion of Crops—Lease,
    Competency of.

In a suit by a chattel mortgagee against a sheriff who had
levied upon the tenant's interest in the grain in question, and
an elevator company, for conversion of grain raised by the
mortgagor tenant under a lease giving him an undivided one-
half interest in the crop, held, that the lease was competent
evidence for defendants, under the issues.

7.  Evidence—Chattel Mortgage—Ownership Disputed—Waiver of
    Mortgage Lien—Agent for Collection, Statement of, Authority
    of.

In a suit by the assignee of a chattel mortgage for conver-
sion of a tenant's interest in grain raised under a farm lease,
where the tenant's judgment creditor had levied upon his
interest in the proceeds of the grain, held, that statements
tending to show a waiver of plaintiff's lien, made by the
cashier of the bank to which the mortgage was given and

which then actually had the note secured by the mortgage in
its possession for collection, were admissable in evidence, it
appearing that there was some dispute as to whether plaintiff
or the original payee was the owner of the note and mortgage.
**Held,** further, that if plaintiff was owner thereof, it was not
within the scope of authority of its agent for collection to waive
the mortgage lien.

8.   **Chattel Mortgage—Lien—Filing of Assignment of Mortgage—
     Necessity—Statute, Amendment, Effect—Omission in Amend-
     ment.**
     Civ. Code of 1903, Sec. 2095, relating to the filing of in-
struments by the Register of Deeds, was amended by laws
1907, Chap. 188, so as "to read as follows," there being in the
amendatory act a requirement that an assignment of a chattel
mortgage be filed in said office. **Held,** that by the amendment
the new matter became a part of said section; that the original
section ceased to exist and the new amended section was sub-
stituted therefor; and therefore, when said amended section
was further amended by laws 1909, Chap. 153, declaring that
Sec. 2095 of the Rev. Civ. Code of 1903 is hereby amended
"to read as follows"; by which amendment the requirement
that an assignment of a chattel mortgage be so filed was
omitted, such omission was not fatal, but said last amendment
in effect repealed the provisions of the first amendatory act.

Appeal from circuit court, Codington County. HON. CARL
G. SHERWOOD, Judge.

Action by The National Bank of Wheaton, Minn., against
Frank Elkins, sheriff of Codington County, and others, for
conversion of grain. From a judgment for defendants, and from
an order denying a new trial, plaintiff appeals. Reversed and new
trial granted.

*Hanten & Hanten,* and *Perrett F. Gault,* for Appellant.

*Mather & Stover,* for Respondents.

(1) To point one of the opinion, Respondent cited: Her-
mann v. Minnekota Elevator Co. (N. D. 1914) 145 N. W. 821;
Savings Bank of Larchwood v. Canfield et al., (S. D. 1900) 81
N. W. 630.

(2) To point two of the opinion, Appellant cited: Rev. Civ.
Code, Sec. 2024; Iverson v. Soo Elev. Co., 22 S. D. 638; Dona-
van v. St. A. & D. Elev. Co., 7 N. D. 513, 75 N. W. 809; Lyon
v. Philips, 20 S. D. 607.

(5) To point five of the opinion, Appellant cited: Pol. Code,

Sec. 488; Bedigood v. Monarch Elevator Co., (N. D.) 84 N. W. 561; Best v. Nuir, 8 N. D. 44, p. 46.

(7) To point seven of the opinion, Appellant cited: I Am. & Eng. Ency. of Law, 1028; Mechem on Agency, Sec. 376; Couch v. Davison, 19 So. 507.

(8) To point eight of the opinion, Respondent cited: Laws 1907, Ch. 188.

GATES, J. This is an action for the conversion of grain brought by the assignee of a chattel mortgage. In August, 1911, one Brooks leased from one French two quarter sections of land in Codington county for the year ending October 1, 1912, viz., the S. E. ¼ of section 1 and the S. E. ¼ of section 2, 118, 55. The lease provided for an equal division of the crops, reserving title and the possession thereof in lessor until full performance of the terms of the lease by the lessee and settlement between them. In October, 1911, lessee mortgaged to the defendant Farmers' State Bank his undivided half of 40 acres of rye to be grown in 1912 on the S. E. ¼ of said section 1. In November, 1911, lessee mortgaged to the State Bank of Florence (among other things) his undivided half of all of the crops to be grown in 1912 on the S. E. ¼ of said section 2 to secure the payment of a note for $212.15, dated November 27, 1911, and due October 1, 1912. Appellant contends that this note was, for value and before maturity, sold and transferred to plaintiff. Both mortgages were promptly filed in the register of deeds office. Lessee raised no rye on the S. E. ¼ of said section 1, but did raise between 120 and 125 acres of rye on the S. E. ¼ of said section 2. On September 1, 2, and 3, 1912, Brooks hauled the rye to the elevator of the defendant Elevator Company, and memorandum slips or tickets were delivered therefor by the Elevator Company. On the afternoon of September 3, Brooks and his landlord, French, met at the elevator for the purpose of dividing the rye and making settlement. This had been accomplished, and the grain buyer had written a check to French for his share and a check for $443 payable jointly to Brooks and the defendant Farmers' State Bank, and had delivered it to Brooks. The defendant sheriff then appeared and levied upon Brooks' share of the rye under execution issued on a judgment in favor of defendant Monks against Brooks. The manager of the elevator then took back the check from Brooks.

On September 17, 1912, another levy was made under said execution upon Brooks' share of the grain and the proceeds thereof, and notice was served on the manager. The check was then delivered to the sheriff, who cashed it at the bank of defendant Farmers' State Bank, which retained $133 thereof and applied the same on its mortgage. From the remaining proceeds of the check the sheriff paid $253.12 to the defendant Monks. Proper demand was made on the several defendants before the beginning of this action. Upon the theory that the lien of plaintiff's mortgage never attached to the grain, the trial court, following the North Dakota decisions, directed a verdict in favor of defendants. From the judgment and order denying a new trial, plaintiff appeals.

The record discloses the reasons which caused the trial court to grant the motion for a directed verdict, viz.:

"In my view of this situation I think that the legal effect is that the second levy and the proceedings under it are abandoned. The first levy made by the sheriff and the judgment creditor might have been levied upon this grain in the elevator, provided it had not been sold; that would not determine whether or not the mortgage attached to the grain. I think the undisputed evidence as it now stands is that on the 3d day of September, 1912, Brooks, the mortgagor, and French, the lessor, had in the elevator about 1,800 bushels of stored grain or rye that had not been divided; that on the 3d day of September, 1912, they met and settled their business between themselves; that this grain at that time was stored grain, and the only right that Brooks or French, either one of them, had was to receive grain of like kind and quality, but not the identical grain; that they both parted beyond their power to receive back the identical grain, and therefore that when the settlement was made between them the title and right of possession still remained in French, and a lien of this mortgage never did attach. I think that is the record at this time."

[1, 2] It is the settled rule of this jurisdiction that the interest of the tenant in crops to be grown under this kind of farm lease or contract is the subject of mortgage. Section 2024, C. C.; Lyon v. Phillips, 20 S. D. 607, 108 N. W. 554; Iverson v. Soo Elevator Co., 22 S. D. 638, 119 N. W. 1006. That being so, it is difficult to follow reasoning which recognizes that upon

settlement and division of the crops ownership did accrue in the tenant for the purpose of a levy under execution, but did not accrue for the purposes of plaintiff's mortgage.

[3]    Plaintiff's mortgage was of record, and was constructive notice that the tenant's equitable interest in the grain was incumbered, and was constructive notice as to what the mortgagee's legal rights would be when settlement was had between landlord and tenant.    While at all times after the crop came into existence the mortgage attached to the equitable interest of the tenant, it seems to us that, the instant settlement was had and division of the crops was made, the tenant's interest became a legal interest, as well as an equitable interest, and the lien of plaintiff's mortgage then attached to the legal interest, regardless of who was then in the actual possession of the crop, and regardless of the fact that the tenant could only require a return of like kind, quality, and amount from the Elevator Company.

Counsel for respondent rely upon the decision of this court in Savings Bank of Larchwood v. Canfield, 12 S. D. 330, 81 N. W. 630.    It is apparent that in the treatment of that case the court was considering the legal title of the tenant, and not the equitable title, when it said:

"Our conclusion is that Hultman never acquired an interest mortgageable either to appellant or George W. Snook."

If the contrary be thought, then that decision was overruled in the later decisions of this court hereinbefore cited, so far as the mortgageability of an equitable interest is concerned.

The moment division was made the lien of plaintiff's mortgage did attach to the tenant's legal title to his share of the grain ahead of any possible levy of execution, and the Elevator Company then held the tenant's share subject to plaintiff's mortgage. When thereafter it issued a check which did not recognize plaintiff's lien, it did so at its peril.    Jones on Chattel Mortgages (5th Ed.) § 69; Potts v. Newell, 22 Minn. 561; Denison v. Sawyer, 95 Minn. 417, 104 N. W. 305; Riddle v. Dow, 98 Iowa, 7, 66 N. W. 1066, 32 L. R. A. 811.

We have given careful attention to the North Dakota decisions on this subject, particularly to Herrmann v. Minnekota Elevator Co., 27 N. D. 235, 145 N. W. 821; but we cannot adopt the views of that court as laid down in that case.    In the first

place, that decision is in conflict with the settled law of this state as announced in Lyon v. Phillips and Iverson v. Soo Elevator Co., supra. In the second place, the logic of the Herrmann decision would lead to the unconscionable result that prior to settlement and division the entire crop in the present case would have been subject to a levy of execution against the landlord, to the exclusion of any right or interest on the part of the tenant therein. The logic of the North Dakota decisions would also lead to the result that the tenant's rights in the crop might be entirely lost through the act of the landlord, though the former has strictly complied with the terms of his lease.

Suppose the landlord had taken the grain to the elevator and had received the warehouse receipts, and the landlord and tenant had met at the elevator and effected a settlement of their matters. Then suppose the landlord should say to the tenant: It is true that you have faithfully performed your contract, and on this settlement you are entitled to half of the grain; but inasmuch as the title was in me when it was taken to the elevator, and inasmuch as I have no right to a return of the specific grain, but only a right to a return of like amount, kind, and quality; you have no interest in the grain, and I am going to keep the proceeds. Has the tenant no recourse, except in an action against the landlord for damages?

[4] Whatever may be the precise relationship between the landlord and tenant under this kind of farm lease (Tiffany on Landlord & Tenant, § 253), it surely does not contemplate the vesting of absolute title to the crops in the landlord, so as to make the whole crop subject to the debts of the landlord. The title and possession reserved by the lease may be said to be a kind of theoretical title and possession for the protection of the landlord, but not for the purpose of enabling him to violate the rights of the tenant, or the rights of creditors of the tenant. That the parties to the lease did not contemplate that such reservation of the title and possession was absolute is apparent by the further paragraph in the lease, viz.:

"It is also agreed that in case said party of the first part [tenant] neglects or fails to perform any of the conditions and terms of this contract on his part to be done and performed, then said party of the second part [landlord] is hereby authorized

and empowered to enter upon said premises and take full and absolute possession of the same, and he may do and perform all things agreed to be done by the party of the first part remaining undone, and to retain or sell sufficient of the crops raised on said premises that would otherwise belong to said first party if he had performed the conditions hereof, to pay and satisfy all costs and expenses of every kind incurred in performing said contract, with interest at ———— per cent. per annum, and the residue remaining, if any, of said crops, shall belong to said party of the first part, after all conditions are fulfilled."

It is clear, therefore, that until a breach by the tenant the actual possession of the crops remained in him, notwithstanding the prior reservation of title and possession in the landlord.

[5]   It is undoubtedly true that under the provisions of the warehouse law (Pol. Code, § 488), where warehouse receipts are given for stored grain, the holder of the receipts may not require the restoration of the identical grain, but only grain of the same amount, kind, and quality; but how can this affect the lien of the mortgage? With all deference to the decisions of our sister state, we feel that it is unimportant in the solution of this question whether Brooks or the mortgagee had or had not the right to demand the return of the specific grain. The rights of a mortgagee cannot thus be dissipated into thin air by the acts of the landlord or tenant.

[6]   Complaint is made that the trial court allowed the lease to be introduced in evidence. The lease was clearly competent under the issues, and its exclusion would have been error.

[7]   Complaint is also made because the trial court allowed evidence of certain statements, tending to show a waiver of plaintiff's lien, made by the cashier of the bank to which the mortgage was given, and which then actually had the note in its possession for collection. In view of the fact that there was some dispute as to whether plaintiff or the original payee was the owner of the note and mortgage, we do not think it was error to admit such testimony; but, if verdict had not been directed, the jury should have been instructed to disregard such testimony, if it found that plaintiff was the owner of the note and mortgage at the time those statements were made. If the plaintiff was the owner of the note and mortgage at that time, it was not

within the scope of the authority of its agent for collection to waive the lien of the mortgage.

[8]    It is further contended, on the part of respondent that the assignment of the mortgage from the State Bank of Florence to the plaintiff was not filed in the office of the register of deeds, as required by chapter 188, Laws 1907, and therefore that the lien of the mortgage was waived by the acts of the cashier of the original mortgagee. A reference to that chapter discloses that it amended section 2095 of the Civil Code of 1903 "to read as follows." In section 2095 as thus amended there was a requirement that an assignment of a chattel mortgage be filed in the office of the register of deeds. By the amendment the new matter became a part of section 2095. Thereafter the old section 2095 ceased to exist, and the new section 2095 was substituted for it. Black, Interp. of Laws, § 130. In 1909 the Legislature, by chapter 153, declared "that section 2095 of the Revised Civil Code of 1903 be and it is hereby amended to read as follows." In that act the requirement that an assignment of the chattel mortgage be filed in the register of deeds' office was omitted. While the orderly way to have prepared the bill which was last enacted would have been to have provided that section 2095 of the Revised Civil Code of 1903, as amended by chapter 188, Laws 1907, be "amended to read as follows," we do not think such omission was fatal. 36 Cyc. 1055. By a contrary holding it would of necessity follow that the act of 1909 was a nullity, because, if repondent's theory is correct, after the amendment of 1907 there was no longer any section 2095 of the Revised Civil Code of 1903, and the act of 1909 purported to amend something that was not in existence. We are of the opinion that chapter 153, Laws 1909, repealed the provisions of chapter 188, Laws 1907.

The judgment and order appealed from are reversed, and a new trial granted.