MERCHANTS' STATE BANK, a Corporation, Appellant, v. SAW-
YER FARMERS' CO-OPERATIVE ASSOCIATION, a Co-
operative Association, Respondent.

(14 A.L.R. 1353, 182 N. W. 263.)

**Landlord and tenant — lessee's interest in crops under farm lease on
shares not superior to landlord's rights.**

1. Where a lease of a farm on shares contains a provision to the effect
that title to and possession of all crops shall be in the lessor until the con-
ditions of the lease have been complied with by the lessee and a division
made of the crop, he (the lessee) has an equitable interest in the crops, even
prior to the performance of the conditions and division of the crop; but such
equitable interest is not superior to and does not avoid or infringe upon the
rights of the landlord as reserved in such stipulation. The rights of both the
landlord and tenant are measured by the terms of their contract. And such
rights will be recognized and enforced not in derogation of, but in harmony
with, each other.

**Landlord and tenant — lease on shares held effective, without filing as
chattel mortgage, as to purchaser of crops from lessee.**

2. The provision reserving title to all crops in the landlord is effective with-
out filing the contract as a chattel mortgage. An assignee of the tenant is
presumed to be acquainted with the terms and stipulations of the lease, and
acquires no greater rights than the tenant had to transfer.

Opinion filed March 17, 1921.

Appeal from the District Court of Ward County, *Leighton, J.*

Plaintiff appeals from an order sustaining a demurrer to the com-
plaint.

Reversed.

*Bagley & Thorpe,* for appellant.

"Possession by a tenant is constructive notice, as to third persons, of
the title of the landlord." 24 Cyc. 924.

"The ownership of the realty carries with it, as an incident thereto,
the prima facie presumption of the ownership of annually sown crops.
And the owner of the land may, in parting with the use of it to another,
make such conditions and reservations in relation to the land itself or to

Note.—Authorities discussing the question of necessity of filing lease or contract
which reserves title to crops in lessor are collated in a note in 14 A.L.R. 1362.

the products growing from it as he chooses, instead of parting with the full right." 17 C. J. 381 and North Dakota cases cited in note 33.

"An instrument leasing premises and providing that title to all crops raised shall be in the lessor until the rent has been paid is not a chattel mortgage so as to be required to be executed as such." Dobbs v. Atlas Elevator Co. (S. D.) 126 N. W. 250; Mueller v. Bohn (N. D.) 171 N. W. 255.

*Nestos & Herigstad,* for respondent.

"Under the regular crop contract, each party has title to his share of the crop from the time it is sown until it is harvested, threshed, and sold, and he may at any time sell or mortgage his share of the crop, subject, of course, to any just liens." Fraine v. N. D. Grain & Land Co. 170 N. W. 307; McNeal v. Rider, 81 N. W. 830; Agne v. Skewis-Moen Co. 107 N. W. 415, 23 L.R.A. 468, 14 Am. St. Rep. 166, 119 Am. St. Rep. 122.

CHRISTIANSON, J. This action was brought in the district court of Ward county to recover damages for the alleged conversion of certain wheat. The complaint contained two causes of action. The defendant interposed a general demurrer to both causes. The trial court sustained the demurrer, and the plaintiff has appealed.

For a first cause of action it is averred, in substance: That the plaintiff during all of the year 1919 was the owner of certain lands in Ward county in this state; that in the spring it leased such lands for that year, by a written contract or lease on the so-called "crop-share plan," to two men named, respectively, Gordon Fix and F. J. Fix; that by the terms of said contract it was provided that the said Gordon Fix and F. J. Fix should not sell or remove, or suffer to be sold or removed, any of the produce of said farm or premises of any kind, character, or description until the division thereof, without the written consent of the plaintiff, and that until such division, the title and possession of all the hay, grain, crops, and produce raised, grown, and produced on said premises should be and remain in the said plaintiff. That by the terms of said contract it was further provided that the plaintiff might deduct from the share of the crop due to the said Gordon Fix and F. J. Fix certain indebtedness owing to the plaintiff from one Anton Fix, the father of said Gordon Fix and F. J. Fix. That the contract further provided

that the said plaintiff might deduct from the share coming to said Gordon and F. J. Fix any just costs or disbursements and any indebtedness owing from them to the said plaintiff. That the said Gordon Fix and F. J. Fix farmed the land described in such contract during the season 1919, and raised 503 bushels of macaroni wheat and 585 and 30 pounds of D-5 wheat. That the plaintiff got its full share (one-half of all) of the macaroni wheat, with the exception of 4 bushels. That the D-5 wheat was all sold, and the proceeds of the share of the crops stipulated to be turned over to said Gordon and F. J. Fix, amounting to $679.64, was turned over to the plaintiff, who applied $662.70 thereof on the indebtedness of Anton Fix in accordance with the stipulation in the contract to that effect, and applied the balance of $16.94 on advances made by the plaintiff to the said Gordon and F. J. Fix in connection with the threshing of the grain. That during the year the plaintiff advanced to the said Gordon and F. J. Fix, $220 in addition to paying their share of the threshing bill. That these items have not been paid. That the notes of Anton Fix which were paid by the proceeds of the crop were, by the plaintiff, delivered to Gordon and F. J. Fix, and received and retained by them without protest. That no division of the crop was ever made. That on October 17, 1919, Gordon Fix delivered to the defendant 127 bushels and 30 pounds of macaroni wheat. That plaintiff made demand on the defendant for such wheat, and that such demand was refused. That the defendant had no actual knowledge of the conditions contained in the farm contract. That said contract was at no time recorded or filed in the office of the register of deeds of Ward county.

The second cause of action constitutes a reaverment of the foregoing facts, and in addition thereto it is averred that on or about March 8, 1919, said F. J. Fix made, executed, and delivered to the plaintiff his certain promissory note in the sum of $220.63 payable October 1, 1919, with interest from date at the rate of 10 per cent per annum. That at the same time and place, for the purpose of securing the payment of said note, said F. J. Fix executed and delivered to the plaintiff a certain chattel mortgage, whereby, among other things, he mortgaged to the plaintiff an undivided one-fourth interest in and to all crops of every kind sown, grown, or harvested during the year 1919 upon the premises in controversy. That said chattel mortgage was filed for record in the

office of register of deeds of Ward county on March 9, 1919. That the plaintiff is the owner and holder of said promissory note and chattel mortgage, and that no part of the indebtedness evidenced thereby has been paid.

The defendant contends that the provision in the contract reserving title in the plaintiff to all of Gordon and F. J. Fix's share of the crop was ineffective against it, for the reason that the contract was not filed as a chattel mortgage. That contention presents the principal, and determinative, question on this appeal.

Defendant admits that this court in McFadden v. Thorpe Elevator Co. 18 N. D. 93, 118 N. W. 242, ruled that such provision was effective without filing; but it contends that that decision was overruled by this court in Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A. 1917E, 298, 162 N. W. 543. The question of the filing of such contract was not involved or decided in the Branum Case. The controversy there arose between the holder of a chattel mortgage and a general creditor who had garnished an elevator company which had received into its possession the tenant's share of the grain before any division had been made. Under former decisions of this court it had been ruled that the tenant, prior to division, had no interest in the grain to which a mortgage could attach. After due consideration we determined that such former rulings were erroneous. The decision in the Branum Case, however, was specifically restricted to the following propositions: "1. That instruments known as cropper's contracts or farm leases, like all other contracts, must be construed so as to carry into effect the actual intention of the parties thereto. One provision cannot be singled out and given an effect nullifying other provisions, but the contract must be construed as a whole, and the real intention of the parties as thus gathered must control.

"2. That where a lease of a farm on shares gives to the lessee a certain share of the crop, but contains a provision to the effect that title shall remain in the lessor until the conditions of the lease have been complied with by the lessee, he (the lessee) has an equitable interest in the crops, even prior to the performance of the conditions, which equitable interest may be mortgaged.

"3. That the decisions of this court in Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561, and Herrmann v.

Minnekota Elevator Co. 27 N. D. 235, 145 N. W. 821, in so far as they announce the doctrine that a lessee under such lease has no interest in the grain to which a mortgage lien can attach until after a division of the crop has been made, are hereby overruled." 36 N. D. 383.

The free and untrammeled right to make lawful contracts is guaranteed not only by the Constitution of the state, but by the Federal Constitution, N. D. Const. §§ 1, 13; 14th Amend. U. S. Const. 6 R. C. L. pp. 269, 270.. The decision in the Branum Case was not intended to deny or infringe upon such right. The decision did not hold the provision reserving title in the landowner to be ineffective or void. If this court had so ruled, then of course the lessee would have been the *legal* owner of the share of the crop coming to him; but the decision, it will be noted, merely holds that the lessee under a contract containing such provision "had an *equitable* interest in the crops, even prior to the performance of the conditions (of the contract), which equitable interest may be mortgaged." 36 N. D. 383. This language, at least, impliedly recognized that, prior to the performance of the conditions of the contract, the theoretical legal title is, by virtue of the provisions of the contract, in the landlord. It will also be noted that the former decisions of this court were overruled only *"in so far as they announce the doctrine that a lessee under such lease* (one containing a provision reserving title to all crops in the landlord until the division thereof) *has no interest in the grain to which a mortgage lien can attach until after a division of the crop has been made."* 36 N. D. 383.

The fact that the contract may or may not create the relation of landlord and tenant does not alter or affect the relative rights and obligations of the parties thereto. Those rights and obligations are still measured by the terms of the contract. Thus, in Angell v. Egger, 6 N. D. 391, 71 N. W. 547, this court, in effect, held that the contract was a lease, and the relation between the parties that of landlord and tenant. The court said: "Whether the agreement between plaintiff and defendant created the relation of landlord and tenant is not material. We may safely assume it to be a lease, and certain provisions of it seem to be inconsistent with any other interpretation of it. But while it is true that one who has an interest as lessee in real property is prima facie entitled to the crops raised thereon during the life

of the lease, yet the parties may, by express agreement, provide that the title to certain crops, or to a certain share of all crops, or to all crops until a certain period, or to all crops absolutely, shall vest in the lessor from the time they come into existence. He who owns the land may certainly reserve to himself any interest therein, or in the produce thereof, he sees fit to reserve, provided the other party to the contract assents to such reservation. There is nothing in the law to prevent a lessee from agreeing that he shall own none of the crops. He may even make an improvident agreement, and give the lessor the title to everything raised on the land as a consideration for the right to occupy it. So he may agree that the title to all crops shall remain in the lessor until the happening of a certain event. Such contracts are not opposed to any principle of law, and should be enforced according to their terms." 6 N. D. 396. And in Whithed v. St. Anthony & D. Elevator Co. 9 N. D. 224, 50 L.R.A. 254, 81 Am. St. Rep. 562, 83 N. W. 238, this court held a person cropping land under such contract to be a tenant in possession, under the statute authorizing the purchaser at a judicial sale to receive from a tenant in possession of the property sold the rents thereof from the time of the sale until a redemption. That the contract involved in that case was a lease, and created the relation of landlord and tenant, was especially emphasized in the concurring opinion written by Chief Justice Bartholomew, who also wrote the opinion in Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561, wherein the rule was announced that the tenant under such contract had no mortgageable interest in the grain until after division had been made.

Stipulations reserving title to all crops in the landlord until a division thereof have been the source of much litigation. Some courts have construed such stipulations as vesting actual and complete title in the landlord, and as precluding the tenant from having any interest whatever therein until after a division is made and certain grain set apart to the tenant. That was the view originally taken by this court. After due deliberation we determined that that view was erroneous, and that the tenant did have an *equitable* interest in the crops which he was producing, even before a division. Those views we still entertain. We do not believe that it accords with the intention of the parties to construe such stipulation as vesting the actual

and complete ownership to all the crops in the landlord, and as devesting the tenant of all interest therein until after an actual division has been made. Such construction ignores the very purpose and intention of the parties, and would enable the landlord to violate the rights of the tenant, and "would lead to the unconscionable result that prior to settlement and division the entire crop would be subject to a levy of execution against the landlord, to the exclusion of any rights or interest of the tenant therein." On the other hand, if such contract is nothing but a chattel mortgage, then of course a subsequent mortgagee may limit the credit to be given under the contract and stop all future advances by giving the landlord actual notice of his mortgage; and in many cases this would quite effectively impede the carrying out of the contract. In such cases, the owner would be placed between the mortgagee, who gives him notice, and the cropper, who might have little if any further interest in the crop. The owner in contracting with another to till land on the share plan presumably takes into consideration the personal fitness and ability of the person with whom he contracts. The tenant undertakes himself to do certain things. Under our statute "the burden of the obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise" (except as to covenants running with the land). Comp. Laws 1913, § 5782. If the tenant is the absolute legal owner of the share of the crop stipulated to be turned over to him, even before the performance of the terms of the contract, then of course the stipulation reserving title in the landlord is virtually of no effect whatever, and will in no manner protect the rights of the landlord. If the tenant is the absolute legal owner, he may at any time mortgage and sell his share of the crop, and thereby transfer all the interest which the tenant has at the time he gives the mortgage or makes the sale, and the purchaser or mortgagee, by giving notice to the landlord, could, in effect, terminate and cut off rights which the contract had expressly reserved to him. The tenant in such cases might step out entirely, or be thrust aside by the mortgagee or by the sheriff under a warrant of foreclosure, and the intention of the parties as to essential portions of the contract be wholly defeated. In effect the inducement of the contract would be destroyed, and a contract the parties never made would be substituted by judicial construction. Hence, it seems clear

to a majority of the court that it does not accord with the intention of the parties to construe such stipulation either as vesting the actual complete ownership of all crops in the landlord and as devesting the tenant of all interest therein, or as vesting in the tenant the legal ownership, subject, in fact and in law, to a mere chattel mortgage in favor of the landlord. Either situation is contrary to the intention of the contracting parties. As already stated, the parties have the right to make their own contracts. It is not for the courts to make contracts for them. The courts are alone concerned with ascertaining what the contract is, and, if lawful, then to enforce it in accord with the intention of the parties.

We are not concerned with a situation where, by provision in a lease, it is sought to reserve title in the landlord to certain personal property, such as furniture or appliances, which the tenant has brought upon the premises. We are concerned only with a situation where the owner of land, in contracting with another for its use, expressly stipulates that title and possession of all crops produced shall be and remain in the owner of the land. The right to so contract has frequently been upheld, and, so far as we can ascertain, has never been denied.

It is a well-settled principle of law that "the ownership of realty carries with it as an incident thereto the prima facie presumption of the ownership of both the natural products of the land, such as grass and trees, and the emblements, or annually sown crops, but such presumption is not conclusive. And the owner of land may, in parting with the use of it to another, make such conditions and reservations in relation to the land itself or to the products growing from it as he chooses, instead of parting with the full right." 17 C. J. 381. And where the owner of land, in parting with the use of it to another, stipulates that the legal title, control, and possession of all crops shall be in him for certain purposes, that stipulation is entitled to be enforced so as to carry out the intention and purposes for which it was made. But it will not be construed so as to enable the owner to violate the rights of the tenant, nor will it be construed so as to violate the rights of the owner of the land. On the one hand, the legal title reserved in the landlord will be recognized and enforced in accordance with, and to carry out, the intention and purposes for which the reservation was

made, i. e., it will be enforced in recognition of, and harmony with, the equitable interest which the tenant has in crops, and not in disregard of such interest. On the other hand, the equitable interest of the tenant or those claiming under him will be recognized and enforced in accordance with the terms of the contract,—that is, they will be enforced not in derogation, but in recognition of and harmony with the rights of the landlord as stipulated in the contract. The rights of the landlord and tenant run along parallel lines, and are measured by the terms of the contract. An assignee of the tenant is presumed to be acquainted with the terms and stipulations of the lease, and acquires no greater rights than the tenant had to transfer. Underhill, Land. & T. § 639.

As pointed out in the decision in Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A.1917E, 298, 162 N. W. 543, the supreme court of our sister state, South Dakota (National Bank v. Elkins, 37 S. D. 479, 159 N. W. 60), refused to follow the rule laid down in Bidgood v. Monarch Elevator Co. and Herrmann v. Minnekota Elevator Co. and adopted the rule announced by this court in Minneapolis Iron Store Co. v. Branum, 36 N. D. 384, L.R.A.1917E, 298, 162 N. W. 543. That is, the South Dakota supreme court held that under a farm lease reserving title and possession of all crops in the lessor until a division thereof, the lessee has an equitable interest subject to mortgage, and that such mortgage, after division and settlement, attaches to the legal interest of the lessee. National Bank v. Elkins, 37 S. D. 479, 159 N. W. 60. In so doing, the South Dakota court in effect predicated its ruling upon two former decisions: Lyon v. Phillips, 20 S. D. 607, 108 N. W. 554; Iverson v. Soo Elevator Co. 22 S. D. 638, 119 N. W. 1006 (37 S. D. 479, 159 N. W. 61), The South Dakota supreme court did not, however, deem these decisions contrary to the decision of this court in McFadden v. Thorpe Elevator Co. 18 N. D. 93, 118 N. W. 242; for, although that court in both Lyon v. Phillips, and Iverson v. Soo Elevator Co. supra, had ruled "that the interest of the tenant in crops to be grown under this kind of a farm lease or contract is the subject of mortgage" (37 S. D. 479), it had no hesitancy later to rule that such contract was "not a chattel mortgage, nor in the nature thereof, so as to be required to be executed as such." Dobbs v. Atlas Elevator Co. 25 S. D. 177, 126

N. W. 250. In Dobbs v. Atlas Elevator Co. supra, ¶ 1 of the syllabus reads: "An instrument, leasing premises for a stipulated term at an agreed rental, and providing that the title to all crops raised should be and remain in the lessor until the rent had been paid, is not a chattel mortgage nor in the nature thereof, so as to be required to be executed as such." In the decision in that case the court said: "The instrument is not a chattel mortgage, neither is it an instrument in the nature of a mortgage. McFadden v. Thorpe Elevator Co. supra. The clause therein, that title to the crops raised under the said lease should remain in N. J. Hunt and her assigns until the rent was paid relates solely to the ownership of the crops, and in no manner attempts to create a lien thereon. It is a provision frequently made in leases, and one which the parties had the right to make, whether the landlord received money or a share of the crop as rent. It was a matter subject to, and that might be varied by, the terms of the contract in accordance with the will of the parties. Consolidated Land & Irrig. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; Baumann v. Jerome, 21 S. D. 42, 109 N. W. 513; Olson v. Ausdal, 13 S. D. 26, 82 N. W. 89; 24 Cyc. 1470."

It is interesting to note in this connection that a majority of the members of the South Dakota supreme court (Judges Whiting, Smith, and McCoy) who participated and concurred in the decision in Dobbs v. Atlas Elevator Co. also, participated and concurred in the decision in National Bank v. Elkins. It might further be noted that two of the judges of the South Dakota court (Judges Corson and Whiting), who participated and concurred in the decision in Dobbs v. Atlas Elevator Co. also participated and concurred in the decision in Iverson v. Soo Elevator Co.; and that the decision in Iverson v. Soo Elevator Co. was written by Judge Whiting, who, as already stated, also participated and concurred in the decisions in Dobbs v. Atlas Elevator Co. and National Bank v. Elkins. Hence, in so far as South Dakota is concerned, we have the situation that the supreme court of that state refused to follow the decisions of this court in Bidgood v. Monarch Elevator Co. and Herrmann v. Minnekota Elevator Co. in so far as they announced the doctrine that a lessee, under a lease containing a stipulation that the title to all crops raised shall be and remain in the lessor until certain acts are performed by the

lessee and a division of the crop is made, has no mortgageable interest in the grain until after a division is made; but that it adopted and recognized as correct the rule announced by this court in McFadden v. Thorpe Elevator Co. 18 N. D. 93, 118 N. W. 242, that the stipulation in a farm contract reserving title to the crops in the lessor did not in law constitute a chattel mortgage so as to require the contract to be filed in order to render such stipulation effective against purchasers or encumbrancers claiming under the lessee. In our opinion the conclusions thus reached by the South Dakota court were correct ones. They are in harmony with the views which we have expressed above. They give effect to the intention of the contracting parties, and recognize and enforce their rights in accordance with well-settled legal principles applicable to the relation of the parties and the provisions of their contract. We are of the opinion, and hold, that it was not necessary to file the contract involved in this case as a chattel mortgage in order to render effective, as against subsequent purchasers or encumbrancers claiming under the lessee, the provision reserving title to all crops in the landlord. See McFadden v. Thorpe Elevator Co. supra; Dobbs v. Atlas Elevator Co. 25 S. D. 177, 126 N. W. 250; Fox, B. & Co. v. McKinney, 9 Or. 493. See also Consolidated Land & Irrig. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904.

Reversed and remanded for further proceedings in conformity with this opinion.

BRONSON and BIRDZELL, JJ., concur.

GRACE, J. (concurring in part and dissenting in part). In so far as the majority opinion affirms the decision in the case of Minneapolis Iron Store Co. v. Branum, 36 N. D. 381, L.R.A.1917E, 298, 162 N. W. 543, I am in accord with it. That that case should be recognized as completely settling the law on the questions there involved is a matter about which there can be no controversy, in view of the fact that, for a period of twenty-five years, a large amount of litigation was continually carried on, with reference to the matters and legal propositions which were finally settled in that case. We confidently believe that the decision in this case will be as productive of as much litigation in the court as the case of Angell v. Egger, 6 N. D. 391, 71 N. W. 547.

It is not necessary here to enter into any extended discussion of

that case, for it is fully discussed and analyzed in the case of Minneap-olis Iron Store Co. v. Branum, supra.

Where a farm is rented for a share of the crop, as, for instance, where the owner of the land leases it to another, the tenant, to farm and cultivate, and each to receive one half or a share of the crop, the landlord and tenant are tenants in common of the crops raised by the tenant. Minneapolis Iron Store Co. v. Branum, supra; Smyth v. Tankersley, 20 Ala. 212, 56 Am. Dec. 193; Knox v. Marshall, 19 Cal. 617; Riddle v. Dow, 98 Iowa, 7, 32 L.R.A. 811, 66 N. W. 1066; De Mott v. Hagerman, 8 Cow. 220, 18 Am. Dec. 443; Strangeway v. Eisenman, 68 Minn. 399, 71 N. W. 617; Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; Avery v. Stewart, 75 Minn. 106, 77 N. W. 560, 78 N. W. 244; McNeal v. Rider, 79 Minn. 153, 79 Am. St. Rep. 437, 81 N. W. 830; Adams v. State, 87 Ala. 89, 6 So. 270; Ponder v. Rhea, 32 Ark. 435; Tinsley v. Craige, 54 Ark. 346, 15 S. W. 897, 16 S. W. 570; Creel v. Kirkham, 47 Ill. 344; Taylor v. Bradley, 39 N. Y. 129, 100 Am. Dec. 415; McLaughlin v. Salley, 46 Mich. 219, 9 N. W. 256; Rohrer v. Babcock, 126 Cal. 222, 58 Pac. 537; State, Edgar, Prosecutor, v. Jewell, 34 N. J. L. 259; Wilber v. Sisson, 53 Barb. 258.

To the same effect in principle is National Bank v. Elkins, 37 S. D. 479, 159 N. W. 60.

Where the contract, as in this case, reserves the title to the crops in the landowner, and the right to take and hold enough of the tenant's share to repay advances, etc., that provision is nothing but a chattel mortgage, and, as such, to be valid against creditors of the tenant or subsequent purchasers, without notice, it must be filed in the same manner as is required by our statute for the filing of a chattel mort-gage.

It must be considered that the landowner, by reason of that provi-sion, does not have anything but a lien upon the tenant's share. That lien is a chattel-mortgage lien, nothing else. But, at least some of the members of this court contend that, under the statute requiring chattel mortgages to be filed, in order to be notice to subsequent pur-chasers, there is no provision made whereby the lease should be filed.

We contend that this is not a defect, for the clause in the lien is, in reality, a chattel mortgage, and should be filed as such, and this is the rule in Minnesota and several other states.

In the case of McNeal v. Rider, 79 Minn. 153, 79 Am. St. Rep. 437, 81 N. W. 830, where a provision in a lease similar to that here under consideration was before the court for construction, in an opinion written by Brown, Justice (now Chief Justice, and one conceded by all to be a very eminent jurist), it was directly held that, in legal effect, that provision was a chattel mortgage, and was required to be filed in the same manner as a chattel mortgage. Neither did Minnesota have any law, providing for the filing of leases containing such a provision, in order to give notice of such chattel mortgage interest to subsequent purchasers or creditors. Minnesota then had, and has yet, a law requiring the filing of chattel mortgages, the same as we have at this time.

The Minnesota statute was § 4129, General Statutes 1894. It reads thus:

"*Chattel Mortgage Void, Unless Filed.*—Every mortgage on personal property which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless it appears that such mortgage was executed in good faith, and not for the purpose of defrauding any creditor, and unless the mortgage, or a true copy thereof, is filed as hereinafter provided."

Sections 4130 and 4131 of the General Statutes of 1894 of Minnesota provide for the place of filing and the effect of filing, and the court held that a lease containing a clause similar to the one under consideration, in order to be effective as a lien against subsequent purchasers or encumbrancers of the mortgagor, must be filed in accordance with § 4129, General Statutes of 1894 of Minnesota.

Our § 6758, Comp. Laws 1913, is practically identical with the section of the Minnesota statute. It reads thus:

"*Void as to Whom, Unless Filed.*—A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

It is our opinion that the lien of the landowner on the tenant's share, for advances, etc., is a chattel mortgage, and that to be effective against subsequent purchasers, or encumbrancers of the mortgagor's share of the crop, that such lease must be filed.

This is the logical and only reasonable construction. The opinion of the Minnesota court in the case above cited is based upon justice and reason. It imposes no hardship; it protects everyone, the landowner, as well as the mortgagor and subsequent purchasers or encumbrancers in good faith of the mortgagor's share of the crop, under the lease. It operates to protect the public, to protect those who extend credit to the mortgagor. It in no manner impairs the contract between the landlord and the tenant, but gives effect to it, and to the real intention of the parties. Its further effect is to prevent litigation, by clearly defining the rights of the parties and the right of subsequent encumbrancers and purchasers, and by protecting them.

The only effect of the majority decision in this case is to create chaos, to lay the foundation for much future litigation. Creditors or persons who become subsequent purchasers and encumbrancers of tenants having a lease similar to the one in question will be met, no doubt, in scores of instances, by the landowner, who will appear on the scene, with a lease containing a provision such as this, and will claim the right to the mortgagor's share of the crop, to satisfy all the demands owing the landowner, and will be permitted, under this decision, to hold it, although creditors and subsequent encumbrancers could have known nothing of such a claim, and who, if they had known, would not have extended credit represented by the chattel mortgages, which they may have taken to secure the same.

Under the determination of the matter, as contended for by the writer, all would be protected as in Minnesota, South Dakota, and many other states.

There is no reason why this harsh rule, contained in the majority opinion, should be adopted. It opens the door to collusion and injustice. The landowner and the tenant could, under it, collude and defeat the claim of any mortgagee who may have chattel-mortgage security on the tenant's share of crop.

There is neither reason nor justice in the decision. It is simply one which magnifies the rights of the landlord, or landowner, under his

contract, and accords to him contract rights which he does not possess, under, nor by, the terms of the contract. It gives him far more power and rights than he possessed, under the very terms of the contract. It minimizes the rights of all other parties who are directly interested, or who may become indirectly interested by the taking of a chattel-mortgage lien upon the mortgagor's, or tenant's, share of the crop. It totally disregards the protection due the public and to the secured creditors of the mortgagor. It is a trap into which will be led many scores of unwary creditors who will extend credit to mortgagors, who have such leases, and will be prolific of litigation and dissatisfaction. It is a denial of right and justice.

ROBINSON, Ch. J., concurs.