HALVOR P. HAMMER and George H. Condy, Respondents, v. WOODWORTH ELEVATOR COMPANY, a Corporation, Appellant.

(214 N. W. 251.)

**Vendor and purchaser — conversion — judgment sustained by evidence.**

In this action for conversion, tried to the court without a jury, the evidence is examined and it is found; that the findings of fact and conclusions of law, as made and entered by the trial court, are amply sustained by the evidence, and warrant the judgment entered in this case.

Opinion filed June 1, 1927.

Trover and Conversion, 38 Cyc. p. 2084 n. 16; p. 2086 n. 25. Vendor and Purchaser, 39 Cyc. p. 1387 n. 11 New.

Appeal from the District Court of Griggs County, *Cole,* J.
Affirmed.
*Libby & Harris,* for appellant.
"It is a settled rule in this (Minn.) state that with respect to

Annotation.—Conclusiveness of findings of trial court on appeal, see 2 R. C. L. 203; 1 R. C. L. Supp. 442; 4 R. C. L. Supp. 91; 5 R. C. L. Supp. 81; 6 R. C. L. Supp. 75.

crops which are wholly the result of the labor of the disseisor, and which he has severed and removed from the premises while in possession, the title is in him, and the sole remedy of the owner of the land is his action for mesne profits." Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479.

"A party cannot recover for the use and occupation of the land, and crops too." Aultman & T. Co. v. O'Dowd, 75 N. W. 756.

"Where a trespasser sows a crop and harvests it he can hold it as against the landowner." Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406; Golden Valley Land Co. v. Johnstone, 21 N. D. 101.

"One who sows, cultivates and harvests a crop upon the land of another is entitled to the crops as against the owner of the land, whether he came into possession of the land lawfully or not, so long as he remains in possession until the crop is harvested." Roney v. Halverson Co. 29 N. D. 13.

"He who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent." Branthover v. Monarch Elevator Co. 33 N. D. 454, 156 N. W. 927.

*Sad & Duffy,* for respondents.

"It has been the policy of our laws for a long time that executory contracts for the sale of land shall not be cancelled, and payments thereon forfeited, without first affording the vendee an opportunity to comply with the terms, and obviate the cancellation of the contract. "The free and untrammeled right to make lawful contracts is guaranteed not only by the constitution of the state but by the federal constitution." Suchy v. Strain, 51 N. D. 106, 199 N. W. 193.

"All persons who are sui juris are free to make whatever contracts they please as long as no fraud or deception is practiced and the contracts are legal in all respects." 12 C. J. 949.

"The findings of fact are conclusive upon the parties, the same as would be the verdict of a jury, and in such cases the appellate court will not weigh the evidence, but will presume that the findings are correct." Stavens v. National Elevator Co. 36 N. D. 12.

BURR, J. This is an action in conversion. Plaintiffs allege they were the owners of certain real estate and on July 15, 1922 sold the same to one Edmund M. Culver, under a written contract for sale

whereby the said Culver was to pay the sum of $9,141 for the land, by paying $1,000, December 1st, in each of the years 1922 to 1929 inclusive, and the remainder in 1930 "with interest at 6 per cent per annum payable annually December 1st each year and to pay all taxes . . . beginning with the year 1922, etc." The contract further provided that "for the purpose of securing the payments heretofore agreed upon . . . all grain raised . . . during each and every year covered by this contract shall be delivered by the party of the second part (Culver) free of expense at the elevator nearest such land . . . in the name of the part of the first part (the plaintiffs) . . . and the proceeds applied to the payment, first of any taxes or past due interest . . . and the balance on past due principal . . ." It was further agreed between the parties to the contract "that the title to and ownership and possession of all said grain shall remain and be in the party of the first part until all the covenants herein are complied with." Plaintiffs further allege that during the year 1925 and during the life of the contract, wheat, flax and oats were raised on said land and the grain was delivered to and received by the defendant; that plaintiffs were the owners of said grain, and on the 30th day of January, 1926, made demand upon the defendant for the delivery of the grain and the same was refused; that the value of the grain was $775.44; and that at the said time the said Culver was in default to them under his contract in a sum in excess of $3,000. The answer after customary general denials admits the receipt of some wheat, flax and oats from one Culver, and that the said Culver sold the same to the defendant at its grain warehouse and place of business at Cooperstown, North Dakota. The answer further alleges that the contract for sale of land, described in plaintiffs' complaint, was discontinued and cancelled January, 1925, and that any grain raised on the land described therein belonged to the said Culver and not to the plaintiffs; that the plaintiffs never made any demand on the defendant for the delivery of said grain; and that the plaintiffs, if they had any interest whatever in the grain, waived their right to recover the same by knowingly permitting the said Culver to sell the grain to the defendant and with full knowledge of all his acts remained mute "until after it was too late for this defendant to protect itself against loss, and until after said Culver had removed from said community to Canada."

This case was tried to the court, a jury being waived. The court made findings of fact and conclusions of law favorable to the plaintiffs and ordered judgment for the plaintiffs and against the defendant in the sum of $526.48 with interest and costs. Judgment was accordingly entered and the defendant appeals.

The defendant has six specifications of error and these deal with three main propositions; first, that the contract for the sale of the land made by the plaintiffs with Culver had been cancelled prior to the sowing and harvesting of the crop involved in this action, that the said Culver was in possession of the land and was the owner of the crop, and that plaintiffs had no interest therein; second, that no demand for the return of any of the grain involved in this case was ever made upon the defendant; and, third, that if plaintiffs had any interest in the crop they are estopped from asserting the same against this defendant because of their actions in the premises.

The undisputed facts show that on July 15, 1922, the plaintiffs, as parties of the first part, entered into the contract with one Edmund M. Culver as set forth in their complaint, and that the provisions quoted in the complaint are part of the contract. The evidence shows that on December 24, 1924, the plaintiffs served written notice upon the said Culver to the effect that there was then due and past due on said contract the sum of $3,291.51 "and that unless the same is paid within thirty days from the service of this notice proceedings will be commenced for the cancellation of said contract under the statute in such cases." On the 2nd day of February, 1925, the plaintiffs served upon the said Culver a purported "notice of cancellation of land contract" in which they notified him that because he had failed to make good his default specified in the notice of intention to cancel, and had failed to pay the sum due, they "hereby declare said contract cancelled, said cancellation to take effect upon the 5th day of February, A. D. 1926." The undisputed testimony shows that the said Culver remained in possession of the land under his contract and raised the crop involved in this action. There is no proof as to whether the contract was ever terminated or that Culver ever surrendered possession but the arguments proceed on the assumption of such surrender after the crop was harvested and sold. It is the contention of the defendant that this action on the part of the plaintiffs cancelled the contract, and that no crop

raised after the service of the notice of cancellation belonged to the plaintiffs; but that it belonged to the said Culver, and all the recourse the plaintiffs had against him was a right for rents and profits.

We agree with the trial court that these notices of intent to cancel and of cancellation, given by the plaintiffs, did not cancel the contract. Under our statute, § 8122, the vendee had one year after the service of notice to make good his default, and that year would not expire until the end of 1925 or February, 1926. The plaintiffs evidently considered that the year would not expire until February 5, 1926, as this is the date they set forth in their notice. Until that period at least, the contract was in force.

The court found, finding No. 5, "that on the 30th day of January, 1926, said plaintiffs by their attorneys Sad & Duffy made a demand upon the said defendant for said grain . . . but that the defendant failed and refused to make delivery . . . and disposed of said grain to its own use. . . ." This finding is amply supported by the testimony. In plaintiffs' exhibit No. 3, a copy of a letter which the agent of the company admitted he received, and which is dated February 1, 1926, counsel for the plaintiff made demand for the grain and said "this is a supplemental demand for the above grain, as a demand was made, orally, upon you to your agent John Lindgren at Cooperstown, North Dakota, on the 30th day of January, 1926," Thus it becomes unnecessary for us to determine whether plaintiffs' interest was that of owner or a lien holder, or whether a demand was necessary in the light of defendant's denial of plaintiffs' ownership of or right to the grain.

Defendant says plaintiffs by their acts are estopped from claiming the grain and waived any right they had thereto. The trial court, in finding No. 9, specifically finds "that the plaintiffs at no time waived their right to the grain or right to the title and possession of said grain. . . ." The evidence shows plaintiff Condy was not in this state at the time the grain was threshed and hauled and that neither plaintiff knew where the grain was hauled. It was the duty of Culver to haul the grain to an elevator and place it in the name of plaintiffs. The only testimony as to their knowledge, is their own and both specifically say they did not know where the grain was hauled. There is no

contradiction of this testimony, and therefore this finding of the trial court is amply sustained by the evidence.

The claim of the defendant that it had no notice of any interest in said grain on the part of plaintiffs is untenable in the light of the decision of this court in the case of Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263.

The findings of fact being amply sustained by the evidence, and warranting the judgment entered by the court the decision of the trial court is affirmed with costs to the plaintiffs.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.