CAROLINE MARKEN, Appellant, v. ROBIDEAUX GRAIN COM-
PANY, a Corporation, Respondent.

(216 N. W. 197.)

**Landlord and tenant — cropping contract reserving title to crops in land-
lord as security for advances is valid.**

1. A lease or cropping contract, whereby title is reserved in the owner of
the land as security for advances, is valid and enforceable and is not required
to be filed as a chattel mortgage.

**Leasing real estate — statute of frauds — oral agreement for lease of less
than one year is valid.**

2. Under § 5888 of the Compiled Laws for 1913, an oral agreement for leas-
ing real property for the period of a year or less is valid.

**Landlord and tenant — findings of fact as to landlord's contract held to
support judgment.**

3. In an action for conversion, tried to the court without a jury, it is held
for reasons stated in the opinion, that the judgment is supported by the find-
ings of fact.

Opinion filed November 4, 1927.   Rehearing denied November 26, 1927.

Frauds, Statute of, 27 C. J. § 179 p. 211 n. 23.   Judgments, 33 C. J. § 106 p.
1170 n. 37.   Landlord and Tenant, 36 C. J. § 1926 p. 689 n. 48 New.

Appeal from the District Court of Mountrail County, *Lowe, J.*
Affirmed.

*Paul Campbell,* for appellant.

*B. E. Crippen,* for respondent.

BIRDZELL, Ch. J.   This is an action for conversion of grain.   The
plaintiff is the owner of the land upon which the grain in question was
raised in the year 1925.   The defendant set up a mortgage in favor
of the First National Bank of Parshall, executed by the plaintiff's ten-
ant, as constituting a first lien upon the grain in question by virtue of
which it would be compelled to turn over to the mortgagee the entire

---

Annotation.—(1) As to necessity of filing lease or contract which reserves title
to crops in lessor, see annotation in 14 A.L.R. 1362; 16 R. C. L. 981; 4 R. C. L.
Supp. 1091.

proceeds. The defendant had judgment in the district court and the plaintiff appeals. The appeal is on the judgment roll and the specification of errors raises the sole question as to whether or not the conclusions of law are supported by the findings of fact. The findings briefly stated are to the effect that the plaintiff from 1920 to 1925, inclusive, was the owner of a farm in the vicinity of Parshall; that during that time the farm was cultivated and cropped by one Aubol, a brother-in-law of the plaintiff, under an oral contract; that when the agreement was first made for farming the premises in the year 1920 it was orally agreed that the usual share contract of one-half the crop, plaintiff to furnish the seed and pay half the twine and thresh bill and pay for hauling her share to the elevator. Thereafter during the years 1921, 1922, 1923, 1924 and 1925, the same arrangement continued. There is a specific finding that the testimony shows that the usual half share contract in this state and in the vicinity of Parshall contained a provision that, until all the covenants and agreements to be performed by tenant and farmer shall have been fulfilled and a division made, title and possession of all hay, grains, crops, etc., shall be and remain in the owner and that the owner has the right to take and hold enough of the crops, etc., which would on division belong to the tenant or farmer, to repay any and all advances made by the owner and also to pay all indebtedness due the owner from the farmer or tenant, if any; that upon the performance by the latter the owner was to deliver to him upon the premises the balance of the grain raised as his share or compensation. After this special finding is this clause "but the court does not find that such matters were in the minds of the parties at the time of entering into said contract."

The plaintiff was a resident of Wisconsin and during the years prior to 1925 Aubol attended to the threshing of the grain and hauling the crops to the elevator, with the exception of such portion as was retained for seed or feed, depositing the same in the name of himself and the plaintiff jointly and selling a sufficient portion of the grain to pay for threshing and twine. Where storage tickets were issued they were issued in the names of both parties and upon sale the proceeds would be divided and plaintiff's portion sent to her. In 1921, however, Aubol used 635 bushels of oats belonging to the plaintiff of the value of $317.-50, for which he never paid the plaintiff, and prior to December 12,

1924, the plaintiff made advances of money to Aubol to be used for food, clothing, fuel, feed and otherwise, to the amount of $271.65. For this amount Aubol executed a note payable to the plaintiff, dated December 10, 1924, which note has not been paid. Aubol likewise became indebted to various parties including the First National Bank of Parshall and to secure this indebtedness he had mortgaged practically all of his personal property; that year after year during Aubol's tenancy the plaintiff demanded from his share of the crops sufficient to repay the obligation owing to her and from year to year he promised to repay her from his share of the crop the following year, always representing to her that he was indebted to persons who had mortgages on his personal property and that in case the plaintiff withheld his share of the crops to pay her he would be unable to make settlement with his creditors and they would foreclose and take his personal property and equipment; in consideration of which promises the plaintiff agreed to take the indebtedness out of the succeeding crop.

On August 26, 1924, Aubol gave to the First National Bank of Parshall a chattel mortgage on the crop to be grown in the season of 1925, securing a note in the sum of $751.08, and in February, 1926 there was due on this obligation $701.16. He had given similar mortgages to the bank in prior years without the knowledge of the plaintiff. The 1925 crop was stored in the elevator of the defendant and tickets issued in the names of the plaintiff and Aubol, jointly. Sufficient of the grain was sold to pay threshing and twine bills. Over the protest of the plaintiff the defendant marked upon the tickets "mortgaged grain." Aubol indorsed the certificates in blank, leaving them in the possession of the plaintiff. On December 23, 1925 the value of the grain involved was $653.60. Subsequent to the commencement of this action and without a surrender of the storage tickets, the grain was sold and the proceeds delivered to the bank without the consent of the plaintiff pursuant to its claim under the chattel mortgage. On these findings the court concludes that a contract and agreement between the owner of land and a tenant cannot rest in parol and, to be valid and binding as against subsequent purchasers, mortgagees and incumbrancers of the tenant's share, it must be in writing; that the contract, whereby the owner reserves title until division for the purpose of paying indebtedness due him and advances made, cannot rest in parol as against subsequent mortgagees, purchasers

and incumbrancers, and that the claim of the plaintiff be denied and the action dismissed.

Counsel for the appellant relies for a reversal of the judgment upon the validity of the contract as claimed by him and upon the case of Merchants' State Bank v. Sawyer Farmers' Co-op. Asso. 47 N. D. 375, 14 A.L.R. 1353, 182 N. W. 263, in which it is held that a stipulation in a lease or cropping contract, reserving title as security for advances, is valid and enforcible and is not required to be filed as a chattel mortgage.

An oral agreement for the leasing of real property for the period of a year or less is valid (Comp. Laws 1913, § 5888), and if the lessee continue in possession after the expiration of the lease and the lessor accept rent, there is a presumption that the hiring is renewed. Comp. Laws 1913, §§ 6094 and 6095. Hence, the main question for our consideration is whether or not the parties contracted that the ownership of the crop should remain in the plaintiff until all indebtedness of the tenant to the owner was paid. The appeal being on the judgment roll, our inquiry is limited in this respect to the findings of the trial court. These findings are briefly that the parties in 1920 entered into the usual share contract under which the plaintiff was to have one-half the crop, furnishing seed, paying half the twine and thresh bill and for hauling her share to the elevator, and that this contract was renewed from year to year. The court then finds that the testimony shows that the usual half share contract, which prevailed in that vicinity, contained a provision vesting the ownership of the crop in the owner of the land until all indebtedness of the tenant to the owner were paid, concluding the finding, however, with the qualification that the court does not find that such matters were in the minds of the parties at the time of entering into said contract.

We have not the evidence before us to assist in reconciling the findings. Before this court would be warranted in overturning the judgment, it would be necessary to deduce from the findings a holding by the trial court that the oral contract contained a provision which the court said was not in the minds of the parties at the time of entering into it. We think we are not warranted in so doing. It appears to us, rather, that the holding of the trial court is to the effect that the parties

orally agreed upon the usual crop share arrangement as to percentage upon division and sharing certain of the expenses, and that they had nothing further in mind. Therefore, while not agreeing that the conclusions of the trial court were right with regard to the necessity for a written contract, it does not appear that the judgment is wrong. It is, therefore, affirmed.

NUESSLE, CHRISTIANSON, BURKE, and BURR, JJ., concur.