## BAUMANN v. JEROME.

Where a written contract between the landlord and tenant of a farm secured to the former possession and ownership of the crop until personally divided by him, the evidence **held** to warrant a finding that the landlord had waived his right and authorized the tenant to make the division.

(Opinion filed, October 30, 1906.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Sophia Baumann against Frank Jerome. From a judgment for defendant, plaintiff appeals. Affirmed.

*Joe Kirby,* for appellant. *Muller & Conway,* for respondent.

FULLER, P. J. To sustain appellant's claim of ownership and right to immediately possess 150 bushels of corn grown on her premises by respondent during the year 1904, she relied solely upon a written contract in which it is stipulated in substance that the ownership, title, and possession of all crops shall belong to appellant absolutely until she shall divide the same and deliver two-thirds thereof to respondent upon the farm, and if he fails to perform his agreement in any particular he shall receive nothing for his work and labor, and all that he has produced upon the farm shall be retained by her as damages. As appellant introduced no evidence but the written agreement, there was nothing to show that the covenants entitling respondent to two-thirds of the crop had not been fully performed on his part; but the contention of appellant's counsel is that there has never been a division, and that the ownership of the entire crop is still in his client. That the written contract secured to appellant the possession and ownership of all the product of the farm, including the corn in controversy, until the same was divided according to the terms of that instrument, cannot be doubted; but it was competent for her to waive the right to personally divide the corn and authorize respondent to perform that act, and, according to the evidence objected to, but properly admitted, that is exactly what was done.

The undisputed testimony of respondent raises the presumption of a compliance with the contract on his part, and shows what was said and done about dividing the corn as follows: "I know the

plaintiff. In 1904 I raised somewhere in the neighborhood of 90 acres of corn on this farm. About the 1st day of October, 1904, on this farm, I had a conversation with the plaintiff. Her new tenant had just come to the place and was boarding with me. The conversation was that I was to leave the rent corn on the place for the new tenant. He agreed to take plaintiff's part of it. Plaintiff told me to leave it there, because it would save the trouble of drawing it to the station. Later I husked the corn. Q. Relate the manner in which you divided it and the manner of husking. A. We went through the field. There was 144 rows. We left 48 rows for one Bliss to husk. My son and another man husked two-thirds, and Bliss followed and husked plaintiff's one-third. Q. What was done with the one-third, which was the rent share of the crop, after it was husked? A. I put it into the granary in bins, because I was requested to do so, as fast as it was husked. Q. What was done with the two-thirds share of the crop? A. I put my two-thirds in an old machine shed by itself, five or six rods distance from the other. The whole crop of corn was husked and divided in this manner. After the corn was husked nobody asked me to deliver it to the market. Q. Did you remove any portion of this one-third of the corn from the granary where you had deposited it after husking? A. No, sir. All the plaintiff said to me was that she had sold her corn to the next tenant, and he agreed to take the corn from her, in my presence. She said nothing about what I was to do with this one-third of the corn, for she had sold it, as I supposed, to the next tenant; but to accommodate the next tenant, and because he wanted it, she told me to leave the corn on the place, because she had sold her share of it. I was present when the sheriff replevied the corn in suit, which is not a part of the one-third interest which I had deposited as plaintiff's share of the crop. It was mine that I had in this old machine shed."

From the foregoing testimony and that of other witnesses the jury was fully justified in returning the verdict in favor of respondent, and the judgment accordingly entered and thereafter appealed from is in all respects affirmed.

CORSON, J., took no part in this decision.