FIRST STATE BANK OF NEW SALEM, NORTH DAKOTA, a
Banking Corporation, Respondent, v. FARMERS CO-OPERA-
TIVE ELEVATOR COMPANY, a Corporation, of Stanton,
North Dakota, Appellant.

(231 N. W. 859.)

Opinion filed July 30, 1930.

*Thorstein Hyland,* for appellant.
*Sullivan, Hanley & Sullivan,* for respondent.

NUESSLE, J. This is an action for the conversion of certain grain which the plaintiff claimed under a chattel mortgage. The defendant denied the conversion and damage to the plaintiff. The case was tried to the court without a jury. Plaintiff had judgment. Defendant moved for a new trial. The motion was denied. This appeal is from the order entered accordingly and from the judgment.

In January, 1925, Martin Johnson executed a mortgage to the Union Farmers State Bank of New Salem covering his share of the crop to be raised in 1925 on the tilled portion of 400 acres of land in Oliver county. This land belonged to one Coster and was rented by Johnson. It lay in sections 15 and 22, township 134, range 85. Under the terms of the lease Coster was to receive one-fourth of the crop and Johnson three-fourths. The crop was to be and remain the property of the landlord Coster until a division thereof was made by the landlord. It was to be delivered by Johnson in the elevator at the nearest railroad point, which was Stanton in Mercer county. Johnson also farmed some other land contiguous to the Coster property. He planted about 90 acres of wheat and 30 acres of rye on the Coster land and had wheat and rye on the other land farmed by him. The crop matured, was harvested and threshed, and practically all of it was hauled to Stanton where it was delivered to and stored with the defendant elevator company. It

was in the defendant's elevator on the 18th of October, 1925. The plaintiff, First State Bank of New Salem, became the owner by assignment of the note and mortgage executed by Johnson to the Farmers Union Bank. The mortgage was duly filed in the office of the register of deeds of Oliver county. No certified copy thereof was filed in Mercer county. On November 18, 1925, Meyers, the mortgagee's agent, was at Stanton. He, together with Johnson, interviewed the defendant. Some conversation was had with respect to the grain which Johnson had stored in the elevator and the mortgagee's claim thereto. No division of the grain had been made at that time. Meyers advised the defendant of the mortgage and that the mortgagee claimed Johnson's share of the grain under it and demanded the grain. The defendant told Meyers that the grain could not be disposed of or turned over at that time as there were others who also claimed the grain, but did not otherwise refuse the demand. There was also some conversation with reference to a claim or lien for threshing the grain and Meyers agreed that defendant might advance $85 for the payment thereof. On the 15th of October one Thue had sued Johnson for a large amount and garnisheed the defendant elevator company. The defendant's testimony is that when Meyers was at Stanton with reference to the grain on October 18th, that defendant advised him of the pendency of this action. This is denied by Meyers. In any event, on November 9th the defendant made a disclosure in the garnishment action setting forth the amount of grain belonging to Johnson which it had in its custody. It did not, however, disclose the fact that plaintiff claimed the grain under a mortgage. Judgment was entered against Johnson by default, the grain was sold, and the proceeds applied upon the judgment. Neither the plaintiff nor its assignor the mortgagee, Union State Bank, had any notice of this action or of the garnishment proceedings. In May, 1926, plaintiff's agent went to Stanton, interviewed the defendant and demanded the grain which it claimed under the mortgage. This demand was refused, excepting as to 108 bushels of wheat, a storage ticket for which was given to the plaintiff. In the meantime and sometime in the winter or early spring of 1926, the defendant, assuming to make a division of the grain as between Johnson and Coster, issued storage tickets for what purported to be Coster's one-fourth share and delivered the same to Coster's agent. Coster accepted these tickets as

evidencing his one-fourth share, sold the grain, and received the money therefor.

At the trial of the instant case evidence was received on behalf of the several parties in support of their respective contentions. The trial court found for the plaintiff that it had a valid and existing mortgage on Johnson's share of the grain in the elevator amounting to 741 bushels of wheat and 300 bushels of rye; that the defendant had wrongfully converted the same; that the plaintiff was entitled to recover therefor; and ordered judgment accordingly.

On this appeal the defendant urges a reversal on various grounds, contending that the court erred in rulings on questions of evidence; that the evidence was insufficient to sustain the judgment; that the description of the crop covered by the mortgage was not sufficient; that the defendant had no actual notice of the mortgage and no constructive notice thereof for the reason that no copy was on file in Mercer County; that there was no division of the grain as between Johnson and Coster and so the lien of the mortgage had never attached; and that though there was a valid mortgage and a conversion of the grain, nevertheless the plaintiff was not entitled to recover because of an existing mortgage prior and superior to plaintiff's for an amount exceeding the value of the grain.

We have considered these various contentions and examined the record with respect to them.

The case was tried to the court without a jury and so the rulings on questions of evidence will be viewed much more liberally than would be the case had there been a jury trial. Even though the trial court erred in receiving evidence over objection, nevertheless, if, aside from such evidence so received there is sufficient to sustain the judgment as entered, it will be presumed that the objectionable evidence was disregarded. Viewed in this manner we find no prejudicial error.

The Coster land included some 400 acres. Of this only 130 acres was in crop. The evidence does not disclose the particular subdivisions of this 400 acres on which the crop was planted. On this account the defendant claims that the description in the mortgage was insufficient. We cannot agree as to this. As between the parties the mortgage was clearly good. The trial court found, and the evidence amply sustains this finding, that the mortgagee's agent notified the defendant elevator

company of the mortgage and of the claim to the grain by reason thereof. Under the circumstances, in any event, the description was sufficient as against the defendant. South Omaha Nat. Bank v. Stewart, 75 Neb. 717, 106 N. W. 969; Crow v. Zollars, 11 S. D. 203, 76 N. W. 924; 11 C. J. p. 460, and cases cited. The instant case is clearly distinguishable from the case of First State Bank v. Kellogg Commission Co. 41 N. D. 269, 170 N. W. 635, cited by the defendant.

The defendant contends that there was no good mortgage as against it for the reason that no certified copy thereof was filed in Mercer County, the county where the defendant's place of business is located and where it received the grain. The statute, § 6758, Comp. Laws 1913, provides that unless a mortgage is filed it is void as against creditors and subsequent purchasers and encumbrancers in good faith for value. The purpose of this statute is to give notice to such and a mortgage is valid though not filed where there is actual knowledge of it. See Hanson v. Bloom, 53 N. D. 526, 207 N. W. 144. The defendant had actual knowledge of the mortgage and of the claim of the plaintiff and its assignor under it to the grain and so cannot complain because no copy was filed for record in Mercer county.

The defendant next contends that even though there was a valid mortgage and though it had notice thereof, nevertheless plaintiff suffered no damage on account of a conversion of the grain for the reason that there was outstanding a prior and superior mortgage for an amount greater than the value of the grain. A careful examination of the record discloses that there is no evidence of any such prior mortgage. The defendant's contention in this respect must therefore fall.

Defendant also contends that there was no division of the grain between Johnson and his lessor, Coster, and so plaintiff's mortgage never attached since Johnson's share was not segregated from the whole mass which belonged to Coster until a division thereof. The record, however, discloses that there was in fact a division. Tickets were issued in Coster's name for his one-fourth share. True, Coster was not present when this was done but he accepted the tickets, sold the grain and received the money therefor, and at no time expressed any dissatisfaction with this disposition of the grain. So far as Coster was concerned there was a division. See Baumann v. Jerome, 21 S. D. 42, 109 N. W.

513. This being so, Johnson's share was ascertained and determined and the mortgage attached.

Finally, the defendant insists that the evidence, taken as a whole, is not sufficient to sustain the judgment. It particularly insists that there is no sufficient proof as to the amount of the grain which was raised on the Coster land; that all of the grain raised by Johnson, both on the Coster land and the other land farmed by him, was hauled to the defendant elevator and deposited with it; that the burden is upon the plaintiff to establish by a preponderance of the evidence the kind and amount of grain on which it had a mortgage; and generally that it has failed to do so.

We have examined the record carefully. The plaintiff was at great disadvantage in making its proofs. Johnson was called as a witness but he was hostile and his testimony was evasive and indefinite. There is testimony in the record of statements and admissions made by Johnson with respect to the grain covered by the mortgage, but so far as the defendant is concerned this evidence was purely hearsay and cannot bind it. The thresherman who threshed the grain was also called, but it appears from his testimony that the grain on the Coster land and that grown on the other land farmed by Johnson was threshed together, and he was unable to say as to the amount in bushels threshed from the several tracts. The dockage on both the wheat and the rye was heavy. It is impossible to say just what this dockage was. The burden was on the plaintiff to establish the kind and amount of grain which its mortgage covered. State Bank v. Bismarck Elevator & Invest. Co. 31 N. D. 102, 153 N. W. 459. Considering the whole record, we think the most that can be said for the plaintiff's case is that the whole crop of rye grown on the Coster land and deposited in the defendant's elevator, after deducting the dockage, amounted to 312 bushels, of which Coster's share was 78 bushels and Johnson's share covered by plaintiff's mortgage was 234 bushels; and that the wheat grown on the Coster land and deposited in the defendant's elevator, after deducting the dockage, amounted to 626 bushels, of which 151 bushels, 30 pounds was Coster's share and 454 bushels, 30 pounds was Johnson's share covered by the plaintiff's mortgage. The plaintiff demanded the grain on May 12th. At that time rye was worth 61c per bushel and wheat $1.39 per bushel. At the time demand was made the defendant delivered to the plaintiff

storage tickets for 108 bushels of wheat. Defendant had paid Johnson $85 on account of the thresh bill. This was done with the consent of the mortgagee and defendant is entitled to credit on account thereof. Plaintiff therefore is entitled to judgment for the value of 234 bushels of rye at 61c per bushel, amounting to $142.74, and 346 bushels of wheat at $1.39 per bushel, amounting to $480.94, less $85 paid Johnson by the defendant, so that the total judgment to which the plaintiff is entitled is the aggregate sum of $538.68 and interest from May 12, 1926. The judgment will be modified accordingly and as so modified affirmed.

BURKE, Ch. J., and BURR, BIRDZELL and CHRISTIANSON, JJ., concur.